UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____

| | |
|---|---|
| GOVERNMENT EMPLOYEES INSURANCE COMPANY, GEICO INDEMNITY COMPANY, GEICO GENERAL INSURANCE COMPANY, AND GEICOCASUALTY INSURANCE COMPANY | ANSWER WITH AMENDED COUNTERCLAIMS |

Plaintiffs,

Civil Case No.: 12cv1068
FB/VVP

-against-

| | |
|---|---|
| JONATHAN B. KOGEN, Ph.D., LMK PSYCHOLOGICAL SERVICES, P.C., VALLEY PSYCHOLOGICAL, P.C., and ANDREW BLUMENTHAL | Defendants Demand Trial by Jury |

Defendants,
and

MICHAEL H. ROSENFELD, Ph.D.,
FRANKLIN A. PORTER, Ph.D.
ADVANCED PSYCHOLOGICAL EVALUATIONS, P.C.,
SCS SUPPORT CLAIMS SERVICES, INC.,
EMPIRE STAT MED REVIEW, P.C. and
EMPIRE STAT GROUP, LLC,

Counterclaim Defendants.
_____

Defendants, Jonathan Kogen, Ph.D., LMK Psychological Services, P.C., Valley

Psychological, P.C., and Andrew Blumenthal, by and through their attorney, Law Office of Craig

Meyerson, as and for an Answer to the Complaint hereby state:

1.      Admit that the Complaint names as defendants in this case a properly licensed

psychologist, Jonathan B. Kogen, Ph.D. ("Dr. Kogen"), two medical professional service

corporations LMK Psychological Services, P.C. ("LMK") and Valley Psychological, P.C.

("Valley") (collectively PC Defendants) organized under the laws of and authorized to do

business in New York State, and an independent contractor, Andrew Blumenthal, who manages

1

the day to day administrative operations of the PC Defendants; admit Plaintiffs make untrue and defamatory allegations as the basis of this action; and deny all other allegations set forth in paragraph 1 of the Complaint.

2. Deny the allegations set forth in the Complaint paragraph 2.

3. Deny the allegations set forth in Complaint paragraph 3 except admit that Dr. Kogen is the sole shareholder, officer and director of and properly owns, operates and controls the PC Defendants.

4. Deny the allegations set forth in Complaint paragraph 4 except admit that Mr. Blumenthal is not a healthcare professional.

5. Deny the allegations set forth in Complaint paragraph 5 and refer all questions of law to the Court.

6. Deny the allegations set forth in Complaint paragraph 6 except admit billing GEICO for warranted and appropriate psychological services rendered.

7. Deny the allegations set forth in Complaint paragraph 7.

8. Deny the allegations set forth in Complaint paragraph 8 except admit providing appropriate and warranted psychological services to patients who, upon information and belief, were involved in automobile accidents and eligible for coverage under a GEICO insurance policy.

9. Lack knowledge and information sufficient to form a belief as to what GEICO reasonably relied upon and the amount GEICO paid, admit defendants complied with New York No-Fault Law and that the PC Defendants received payments from GEICO during the approximate last ten years time frame alleged by the Plaintiffs in this action for appropriate and

warranted psychological services rendered, and deny all other allegations set forth in the Complaint paragraph 9.

10.    Deny allegations set forth in Complaint paragraph 10 and refers all questions of law to the Court.

11.    Deny the allegations set forth in Complaint paragraph 11 except admit the receipt of payments from GEICO of No-Fault benefits for psychological services properly and legally rendered.

12.    Lack knowledge and information sufficient to form a belief as to what constitutes a "platform" and deny all other allegations set forth in Complaint paragraph 12.

13.    Admit GEICO brings this action and makes false, defamatory, unsupported and unwarranted representations and allegations; and deny all other allegations set forth in Complaint paragraph 13.

14.    Lack knowledge and information sufficient to form a belief as to what constitutes GEICO's claims and what GEICO relies upon; admit GEICO alleges damages by making false, unsupported and unwarranted representations and allegations; and deny GEICO is entitled to damages and all other allegations set forth in paragraph 14 of the Complaint.

15.    Lack knowledge and information sufficient to form a belief as to what GEICO is seeking; deny GEICO is entitled to declaratory relief regarding unpaid bills; admit PC Defendants are owned and operated in accordance with New York law; and deny all other allegations set forth in Complaint paragraph 15.

16.    Lack knowledge and information sufficient to form a belief as to the allegations set forth in Complaint paragraph 16 except state that the New York State Department of Financial Services does not list as an insurance company licensed to do business in the State of

New York an entity named "GEICO Casualty Insurance Company" and sets forth the address for GEICO General Insurance Company, GEICO Indemnity Company, and Government Employees Insurance Company as One GEICO Plaza, Washington, D.C.

17.     Lack knowledge and information sufficient to form a belief as to the allegations set forth in Complaint paragraph 17 except states that the New York State Department of Financial Services does not list as an insurance company licensed to do business and issue automobile insurance policies in the State of New York an entity named "GEICO Casualty Insurance Company".

18.     Admit the allegations set forth in Complaint paragraph 18.

19.     Lack knowledge and information sufficient to form a belief as to what or where Dr. Kogen is listed as and admit all other allegations set forth in Complaint paragraph 19.

20.     Deny Dr. Kogen did not physically see, examine or perform tests on patients; admit Dr. Kogen did not physically see, examine or perform tests on all patients; Lack knowledge and information sufficient to form a belief to whether Dr. Kogen was identified as the treating or supervising psychologist on PC Defendants' documentation submitted to GEICO; admit Dr. Kogen was identified as the treating provider on certain documentation submitted to GEICO; and deny all other allegations set forth in Complaint paragraph 20.

21.     Lack knowledge and information sufficient to form a belief as to the allegations set forth in Complaint paragraph 21 except admit LMK's initial filing date with the New York State Department of State is June 26, 1998.

22.     Lack knowledge and information sufficient to form a belief as to the allegations set forth in Complaint paragraph 22 except admit that New York State Office of the Professions website lists LMK's business address as 139 Swannekin Road, Blauvelt, New York 10913 and

4

Dr. Kogen is an officer, director and shareholder; admit Dr. Kogen is the sole officer, director and shareholder of LMK.

23.    Lack knowledge and information sufficient to form a belief as to the allegations set forth in Complaint paragraph 23 excepts admit Valley's initial filing date with the New York State Department of State is July 15, 1999.

24.    Lack knowledge and information sufficient to form a belief as to the allegations set forth in Complaint paragraph 24 except admit that New York State Office of the Professions website lists Valley's business address as 139 Swannekin Road, Blauvelt, New York 10913 and Dr. Kogen is an officer, director and shareholder; admit Dr. Kogen is the sole officer, director and shareholder of Valley.

25.    Regarding Complaint paragraph 25, lack knowledge and information sufficient to form a belief as to "the address of record" as defined by the Plaintiffs; admit Mr. Blumenthal resides in a portion of the premises at the address of 139 Swannekin Road, Blauvelt, New York 10913, and works out of an office in another portion of the premises at the address of 139 Swannekin Road, Blauvelt, New York 10913, from where he conducts administrative duties as business manager of LMK and Valley; denies all other allegations, and refers all questions of law to the Court .

26.    Deny the allegations set forth in Complaint paragraph 26 except admit Andrew Blumenthal was a business manager of the PC Defendants.

27.    Lack knowledge and information sufficient to form a belief as to the allegations set forth in Complaint paragraph 27 and refer all questions of law to the Court.

28.    Deny the allegations set forth in Complaint paragraph 28 and refer all questions of law to the Court.

29.     Lack knowledge and information sufficient to form a belief as to the allegations set forth in Complaint paragraph 29 except state that the New York State Department of Financial Services website does not list as an insurance company licensed to do business and issue automobile insurance policies in the State of New York an entity named "GEICO Casualty Insurance Company".

30.     Complaint paragraph 30 is not designed to elicit an answer to allegations of fact, and seeks solely a conclusion of law.  Defendants refer all questions of law to the Court.  To the extent an answer to allegations of fact is required Defendants deny the allegations.

31.     Complaint paragraph 31 is not designed to elicit an answer to allegations of fact, and seeks solely a conclusion of law.  Defendants refer all questions of law to the Court.  To the extent an answer to allegations of fact is required Defendants deny the allegations.

32.     Lack knowledge and information to form a belief as to the allegations set forth in Complaint paragraph 32 and refers all questions of law to the Court.

33.     Admit.

34.     Complaint paragraph 34 is not designed to elicit an answer to allegations of fact, and seeks solely a conclusion of law.  Defendants refer all questions of law to the Court.  To the extent an answer to allegations of fact is required, Defendants deny such allegations except Defendants admit a health care provider may submit claims for No-Fault insurance benefits to an insurer in a form approved by the Department of Financial Services (formerly known in part as Insurance Department) and the insurer has the burden to prove services were medically unnecessary before paying those claims, and states that Courts have determined that medical necessity is not a required part of a proof of claim and have not definitively defined the term "medical necessity".

35.     Complaint paragraph 35 is not designed to elicit an answer to allegations of fact, and seeks solely a conclusion of law.  Defendants refer all questions of law to the Court.  To the extent an answer is required, Defendants deny allegations set forth in Complaint paragraph 35.

36.     Complaint paragraph 36 is not designed to elicit an answer to allegations of fact, and seeks solely a conclusion of law.  Defendants refer all questions of law to the Court.  To the extent an answer is required, Defendants deny allegations set forth in Complaint paragraph 36.

37.     Complaint paragraph 37 is not designed to elicit an answer to allegations of fact, and seeks solely a conclusion of law.  Defendants refer all questions of law to the Court.  To the extent an answer is required, Defendants deny allegations set forth in Complaint paragraph 37.

38.     Complaint paragraph 38 is not designed to elicit an answer to allegations of fact, and seeks solely a conclusion of law.  Defendants refer all questions of law to the Court.  To the extent an answer is required, Defendants deny allegations set forth in Complaint paragraph 38.

39.     Complaint paragraph 39 is not designed to elicit an answer to allegations of fact, and seeks solely a conclusion of law.  Defendants refer all questions of law to the Court.  To the extent an answer is required, Defendants deny allegations set forth in Complaint paragraph 39.

40.     Complaint paragraph 40 is not designed to elicit an answer to allegations of fact, and seeks solely a conclusion of law.  Defendants refer all questions of law to the Court.  To the extent an answer is required, Defendants deny allegations set forth in Complaint paragraph 40.

41.     Complaint paragraph 41 is not designed to elicit an answer to allegations of fact, and seeks solely a conclusion of law.  Defendants refer all questions of law to the Court.  To the extent an answer is required, Defendants deny allegations set forth in Complaint paragraph 41.

42.     Complaint paragraph 42 is not designed to elicit an answer to allegations of fact, and seeks solely a conclusion of law.  Defendants refer all questions of law to the Court.  To the extent an answer is required, Defendants deny allegations set forth in Complaint paragraph 42.

43.     Complaint paragraph 43 is not designed to elicit an answer to allegations of fact, and seeks solely a conclusion of law.  Defendants refer all questions of law to the Court.  To the extent an answer is required, Defendants deny allegations set forth in Complaint paragraph 43.

44.     Complaint paragraph 44 is not designed to elicit an answer to allegations of fact, and seeks solely a conclusion of law.  Defendants refer all questions of law to the Court.  To the extent an answer is required, Defendants deny allegations set forth in Complaint paragraph 44.

45.     Complaint paragraph 45 is not designed to elicit an answer to allegations of fact, and seeks solely a conclusion of law.  Defendants refer all questions of law to the Court.  To the extent an answer is required, deny allegations set forth in Complaint paragraph 45.

46.     Deny the allegations set forth in Complaint paragraph 46.

47.     Deny the allegations set forth in Complaint paragraph 47 except admit Andrew Blumenthal manages the day-to-day administrative duties of the PC Defendants.

48.     Deny the allegations set forth in Complaint paragraph 48.

49.     Deny the allegations set forth in Complaint paragraph 49.

50.     Deny the allegations set forth in Complaint paragraph 50.

51.     Deny the allegations set forth in Complaint paragraph 51.

52.     Deny the allegations set forth in Complaint paragraph 52.

53.     Deny the allegations set forth in Complaint paragraph 53.

54.     Deny the allegations set forth in Complaint paragraph 54.

55.     Deny the allegations set forth in Complaint paragraph 55.

56.     Deny the allegations set forth in Complaint paragraph 56.

57.     Deny the allegations set forth in Complaint paragraph 57.

58.     Deny the allegations set forth in Complaint paragraph 58 except admit that part of the services provided personally by Dr. Kogen included preparing medical reports that interpreted data from tests legally administered to patients by psychologists and social workers employed by the PC Defendants as allowed under the New York State No-Fault Law.  At times, Dr. Kogen prepared these medical reports at his office located in his home in Massachusetts.

59.     Deny the allegations set forth in Complaint paragraph 59.

60.     Deny the allegations set forth in Complaint paragraph 60.

61.     Deny the allegations set forth in Complaint paragraph 61.

62.     Deny the allegations set forth in Complaint paragraph 62 except admit Mr. Blumenthal as business manager performs administrative functions under the control of Dr. Kogen.

63.     Denies the allegations set forth in Complaint paragraph 63 except admits PC Defendants provide psychological services to patients presenting in multidisciplinary medical clinics located in New York.

64.     Deny the allegations set forth in Complaint paragraph 64 except admit that at times as part of his administrative duties Mr. Blumenthal, upon approval of Dr. Kogen, would arrange for PC Defendants to pay rent for use of office space in multidisciplinary clinics in order to provide psychological services.

65.     Deny the allegations set forth in Complaint paragraph 65.

66.     Deny the allegations set forth in Complaint paragraph 66 except admit that at times certain people presented that were not in need of and not provided psychological treatment and services.

67.     Deny the allegations set forth in Complaint paragraph 67.

68.     Deny the allegations set forth in Complaint paragraph 68.

69.     Admit that an Exhibit 1 is attached to the Complaint and deny all other allegations set forth in Complaint paragraph 69.

70.     Deny the allegations set forth in Complaint paragraph 70.

71.     Lack knowledge and information sufficient to form a belief as to when and what E.W. stated and deny all other allegations set forth in Complaint paragraph 71.

72.     Lack knowledge and information sufficient to form a belief as to the allegations set forth in Complaint paragraph 72 except deny E.W., if in fact a patient, did not seek or need psychological services.

73.     Lack knowledge and information sufficient to form a belief as to the allegations set forth in Complaint paragraph 73 except admit Michelle Gulker, Ph.D. was employed at different times by the PC Defendants, first by LMK and then thereafter by Valley.

74.     Lack knowledge and information sufficient to form a belief as to the allegations set forth in Complaint paragraph 74.

75.     Lack knowledge and information sufficient to form a belief as to the allegations set forth in Complaint paragraph 75 except deny defendants advanced false medical documentation.

76.     Lack knowledge and information sufficient to form a belief as to when and what J.L. stated and deny all other allegations set forth in Complaint paragraph 76.

77.     Lack knowledge and information sufficient to form a belief as to the allegations set forth in Complaint paragraph 77 except deny J.L., if in fact a patient, did not request psychological services.

78.     Lack knowledge and information sufficient to form a belief as to the allegations set forth in Complaint paragraph 78.

79.     Lack knowledge and information sufficient to form a belief as to the allegations set forth in Complaint paragraph 79.

80.     Lack knowledge and information sufficient to form a belief as to the allegations set forth in Complaint paragraph 80.

81.     Lack knowledge and information sufficient to form a belief as to the allegations set forth in Complaint paragraph 81 except deny defendants advanced false medical documentation.

82.     Lack knowledge and information sufficient to form a belief as to when and what D.C. stated and deny all other allegations set forth in Complaint paragraph 82.

83.     Lack knowledge and information sufficient to form a belief as to the allegations set forth in Complaint paragraph 83 except deny D.C., if in fact a patient, did not request or need psychological treatment.

84.     Lack knowledge and information sufficient to form a belief as to the allegations set forth in Complaint paragraph 84.

85.     Lack knowledge and information sufficient to form a belief as to the allegations set forth in Complaint paragraph 85.

86.     Lack knowledge and information sufficient to form a belief as to the allegations set forth in Complaint paragraph 86.

87.   Lack knowledge and information sufficient to form a belief as to the allegations set forth in Complaint paragraph 87 except deny defendants advanced false medical documentation.

88.   Deny the allegations set forth in Complaint paragraph 88.

89.   Deny the allegations set forth in Complaint paragraph 89.

90.   Deny the allegations set forth in Complaint paragraph 90.

91.   Deny the allegations set forth in Complaint paragraph 91 except admit that an Exhibit 2 is attached to the Complaint and refers the Court to said Exhibit for what is contained therein.

92.   Deny the allegations set forth in Complaint paragraph 92 except admit that an Exhibit 2 is attached to the Complaint and refers the Court to said Exhibit for what is contained therein.

93.   Deny the allegations set forth in Complaint paragraph 93.

94.   Deny the allegations set forth in Complaint paragraph 94

95.   Deny the allegations set forth in Complaint paragraph 95 except admit an Exhibit 2 is attached to the Complaint and refers the Court to said Exhibit for what is contained therein.

96.   Deny the allegations set forth in Complaint paragraph 96 except admit that at times a preliminary diagnosis of PTSD is made within 30 days of the accident date and an Exhibit 3 is attached to the Complaint and refers the Court to said Exhibit for what is contained therein.

97.   Deny the allegations set forth in Complaint paragraph 97.

98.   Deny the allegations set forth in Complaint paragraph 98.

99.   Deny the allegations set forth in Complaint paragraph 99.

100.    Deny the allegations set forth in Complaint paragraph 100.

101.    Deny the allegations set forth in Complaint paragraph 101.

102.    Deny the allegations set forth in Complaint paragraph 102 except admit that Plaintiff set forth what it calls "examples" in following paragraphs.

103.    Lack knowledge and information sufficient to form a belief as to the allegations set forth in Complaint paragraph 103 since the name of the patient is not provided and the information therefore cannot be confirmed or denied except admit that LMK had an employee named Wendy Iris Levine.

104.    Lack knowledge and information sufficient to form a belief as to the allegations set forth in Complaint paragraph 104 since the name of the patient is not provided and the information therefore cannot be confirmed or denied.

105.    Lack knowledge and information sufficient to form a belief as to the allegations set forth in Complaint paragraph 105 since the name of the patient is not provided and the information therefore cannot be confirmed or denied.

106.    Lack knowledge and information sufficient to form a belief as to the allegations set forth in Complaint paragraph 106 since the name of the patient is not provided and the information therefore cannot be confirmed or denied.

107.    Lack knowledge and information sufficient to form a belief as to the allegations set forth in Complaint paragraph 107 since the name of the patient is not provided and the information therefore cannot be confirmed or denied.

108.    Lack knowledge and information sufficient to form a belief as to the allegations set forth in Complaint paragraph 108 since the name of the patient is not provided and the information therefore cannot be confirmed or denied.

109.    Lack knowledge and information sufficient to form a belief as to the allegations set forth in Complaint paragraph 109 except deny defendants advanced false medical documentation.

110.    Lack knowledge and information sufficient to form a belief as to the allegations set forth in Complaint paragraph 110 since the name of the patient is not provided and the information therefore cannot be confirmed or denied.

111.    Lack knowledge and information sufficient to form a belief as to the allegations set forth in Complaint paragraph 111 since the name of the patient is not provided and the information therefore cannot be confirmed or denied.

112.    Lack knowledge and information sufficient to form a belief as to the allegations set forth in Complaint paragraph 112 since the name of the patient is not provided and the information therefore cannot be confirmed or denied.

113.    Lack knowledge and information sufficient to form a belief as to the allegations set forth in Complaint paragraph 113 since the name of the patient is not provided and the information therefore cannot be confirmed or denied.

114.    Lack knowledge and information sufficient to form a belief as to the allegations set forth in Complaint paragraph 114 since the name of the patient is not provided and the information therefore cannot be confirmed or denied.

115.    Lack knowledge and information sufficient to form a belief as to the allegations set forth in Complaint paragraph 115 since the name of the patient is not provided and the information therefore cannot be confirmed or denied.

116.    Lack knowledge and information sufficient to form a belief as to the allegations set forth in Complaint paragraph 116 except deny defendants advanced false medical documentation.

117.    Lack knowledge and information sufficient to form a belief as to the allegations set forth in Complaint paragraph 117 since the name of the patient is not provided and the information therefore cannot be confirmed or denied except admit that Valley had an employee named Yvonne Bell.

118.    Lack knowledge and information sufficient to form a belief as to the allegations set forth in Complaint paragraph 118 since the name of the patient is not provided and the information therefore cannot be confirmed or denied.

119.    Lack knowledge and information sufficient to form a belief as to the allegations set forth in Complaint paragraph 119 since the name of the patient is not provided and the information therefore cannot be confirmed or denied.

120.    Lack knowledge and information sufficient to form a belief as to the allegations set forth in Complaint paragraph 120 since the name of the patient is not provided and the information therefore cannot be confirmed or denied.

121.    Lack knowledge and information sufficient to form a belief as to the allegations set forth in Complaint paragraph 121 since the name of the patient is not provided and the information therefore cannot be confirmed or denied.

122.    Lack knowledge and information sufficient to form a belief as to the allegations set forth in Complaint paragraph 122 since the name of the patient is not provided and the information therefore cannot be confirmed or denied.

123. Lack knowledge and information sufficient to form a belief as to the allegations set forth in Complaint paragraph 123 except deny defendants advanced false medical documentation.

124. Lack knowledge and information sufficient to form a belief as to the allegations set forth in Complaint paragraph 124 since the name of the patient is not provided and the information therefore cannot be confirmed or denied.

125. Lack knowledge and information sufficient to form a belief as to the allegations set forth in Complaint paragraph 125 since the name of the patient is not provided and the information therefore cannot be confirmed or denied.

126. Lack knowledge and information sufficient to form a belief as to the allegations set forth in Complaint paragraph 126 since the name of the patient is not provided and the information therefore cannot be confirmed or denied.

127. Deny the allegations set forth in Complaint paragraph 127 except lack knowledge and information sufficient to form a belief to if GEICO was billed since the name of the patient is not provided and the information therefore cannot be confirmed or denied.

128. Lack knowledge and information sufficient to form a belief as to the allegations set forth in Complaint paragraph 128 since the name of the patient is not provided and the information therefore cannot be confirmed or denied and states that even if a patient alleges feeling "fine" that does not mean the patient is not in need of psychological services.

129. Lack knowledge and information sufficient to form a belief as to the allegations set forth in Complaint paragraph 129 since the name of the patient is not provided and the information therefore cannot be confirmed or denied.

130.    Lack knowledge and information sufficient to form a belief as to the allegations set forth in Complaint paragraph 130 since the name of the patient is not provided and the information therefore cannot be confirmed or denied.

131.    Lack knowledge and information sufficient to form a belief as to the allegations set forth in Complaint paragraph 131 except deny defendants advanced false medical documentation.

132.    Lack knowledge and information sufficient to form a belief as to the allegations set forth in Complaint paragraph 132 since the name of the patient is not provided and the information therefore cannot be confirmed or denied.

133.    Lack knowledge and information sufficient to form a belief as to the allegations set forth in Complaint paragraph 133 since the name of the patient is not provided and the information therefore cannot be confirmed or denied.

134.    Lack knowledge and information sufficient to form a belief as to the allegations set forth in Complaint paragraph 134 since the name of the patient is not provided and the information therefore cannot be confirmed or denied except deny an unwarranted diagnosis was made.

135.    Lack knowledge and information sufficient to form a belief as to the allegations set forth in Complaint paragraph 135 since the name of the patient is not provided and the information therefore cannot be confirmed or denied.

136.    Lack knowledge and information sufficient to form a belief as to the allegations set forth in Complaint paragraph 136 since the name of the patient is not provided and the information therefore cannot be confirmed or denied.

137.     Lack knowledge and information sufficient to form a belief as to the allegations set forth in Complaint paragraph 137 since the name of the patient is not provided and the information therefore cannot be confirmed or denied.

138.     Lack knowledge and information sufficient to form a belief as to the allegations set forth in paragraph 138 except deny defendants advanced false medical documentation.

139.     Lack knowledge and information sufficient to form a belief as to the allegations set forth in Complaint paragraph 139 since the name of the patient is not provided and the information therefore cannot be confirmed or denied.

140.     Deny the allegations set forth in Complaint paragraph 140.

141.     Lack knowledge and information sufficient to form a belief as to the allegations set forth in Complaint paragraph 141 since the Plaintiffs do not identify the patient and this paragraph is vague and ambiguous.

142.     Deny the allegations set forth in Complaint paragraph 142 except admit Dr. Kogen did not meet with all patients.

143.     Lack knowledge and information sufficient to form a belief as to the allegations set forth in Complaint paragraph 143 as this paragraph is vague and ambiguous except admit Dr. Kogen lawfully evaluates results of tests lawfully administered by PC Defendants employees.

144.     Deny the allegations set forth in Complaint paragraph 144 except admit Dr. Kogen resides in Massachusetts and at times writes reports and evaluations at his office located in his home in Massachusetts of tests lawfully administered by PC Defendants' employees.

145.     Lack knowledge and information sufficient to form a belief as to the allegations set forth in Complaint paragraph 145 except admit reports are written after diagnostic interviews are completed.

146.    Deny the allegations set forth in Complaint paragraph 146.

147.    Deny the allegations set forth in Complaint paragraph 147.

148.    Deny the allegations set forth in Complaint paragraph 148 except admit that at times PC Defendant employees would suggest a treatment plan for patients.

149.    Deny the allegations set forth in Complaint paragraph 149.

150.    Deny the allegations set forth in Complaint paragraph 150.

151.    Deny the allegations set forth in Complaint paragraph 151.

152.    Deny the allegations set forth in Complaint paragraph 152.

153.    Lack knowledge and information sufficient to form a belief as to what, when or if "L.M." told an investigator and deny all other allegations set forth in Complaint paragraph 153.

154.    Lack knowledge and information to form a belief as to if "L.M." was "away at college" while being treated and deny all other allegations set forth in Complaint paragraph 154.

155.    Lack knowledge and information sufficient to form a belief as to the allegations set forth in Complaint paragraph 155 since the name of the patient is not provided and the information therefore cannot be confirmed or denied.

156.    Lack knowledge and information sufficient to form a belief as to the allegations set forth in Complaint paragraph 156 since the name of the patient is not provided and the information therefore cannot be confirmed or denied.

157.    Lack knowledge and information sufficient to form a belief as to what GEICO relied upon except deny defendants advanced false medical documentation and deny all other allegations set forth in Complaint paragraph 157.

158.    Lack knowledge and information sufficient to form a belief as to the allegations set forth in Complaint paragraph 158.

159.     Lack knowledge and information sufficient to form a belief as to the allegations set forth in Complaint paragraph 159.

160.     Lack knowledge and information sufficient to form a belief as to the allegations set forth in Complaint paragraph 160.

161.     Lack knowledge and information sufficient to form a belief as to the allegations set forth in Complaint paragraph 161.

162.     Lack knowledge and information sufficient to form a belief as to the allegations set forth in Complaint paragraph 162.

163.     Lack knowledge and information sufficient to form a belief as to what GEICO relied upon except deny defendants advanced false medical documentation and deny all other allegations set forth in Complaint paragraph 163.

164.     Lack knowledge and information sufficient to form a belief as to what or when "R.G." testified and if or when an examination under oath was conducted, and deny all other allegations set forth in Complaint paragraph 164.

165.     Lack knowledge and information sufficient to form a belief as to the allegations set forth in Complaint paragraph 165.

166.     Lack knowledge and information sufficient to form a belief as to the allegations set forth in Complaint paragraph 166.

167.     Lack knowledge and information sufficient to form a belief as to what GEICO relied upon except deny defendants advanced false medical documentation and deny all other allegations set forth in Complaint paragraph 167.

168.     Lack knowledge and information sufficient to form a belief as to what, when or if "E.W." made a statement and deny all other allegations set forth in Complaint paragraph 168.

169.    Lack knowledge and information sufficient to form a belief as to the allegations set forth in Complaint paragraph 169.

170.    Lack knowledge and information sufficient to form a belief as the allegations set forth in Complaint paragraph 170.

171.    Lack knowledge and information sufficient to form a belief as to the allegations set forth in Complaint paragraph 171.

172.    Lack knowledge and information sufficient to form a belief as to the allegations set forth in Complaint paragraph 172.

173.    Lack knowledge and information sufficient to form a belief as to what GEICO relied upon except deny defendants advanced false medical documentation and deny all other allegations set forth in Complaint paragraph 173.

174.    Lack knowledge and information sufficient to form a belief as to the allegations set forth in Complaint paragraph 174.

175.    Lack knowledge and information sufficient to form a belief as to the allegations set forth in Complaint paragraph 175.

176.    Deny the allegations set forth in Complaint paragraph 176 except admit submitting bills to GEICO for psychological services that conformed to accepted practices in the profession and duly and appropriately rendered.

177.    Lack knowledge and information sufficient to form a belief as to the codes used for the billings in question, states services rendered to each patient conforms to accepted practice in the profession, and denies all other allegations in Complaint paragraph 177.

178.    Lack knowledge and information sufficient to form a belief as to the allegations set forth in Complaint paragraph 178.

179.    Deny the allegations set forth in Complaint paragraph 179 except admit submitting to GEICO upon verification requests certain information that may have included reports and notes.

180.    Deny the allegations set forth in Complaint paragraph 180.

181.    Deny the allegations set forth in Complaint paragraph 181.

182.    Deny the allegations set forth in Complaint paragraph 182 except admit billing GEICO as allowed under the New York State No-Fault Law for services appropriately rendered that conformed to accepted practice in the profession.

183.    Deny the allegations set forth in Complaint paragraph 183 except admit billing GEICO as allowed under the New York State No-Fault Law for services appropriately rendered that conformed to accepted practice in the profession.

184.    Deny the allegations set forth in Complaint paragraph 184.

185.    Deny the allegations set forth in Complaint paragraph 185.

186.    Deny the allegations set forth in paragraph 186.

187.    Lack knowledge and information sufficient to form a belief as to the allegations set forth in Complaint paragraph 187.

188.    Deny the allegations set forth in Complaint paragraph 188.

189.    Deny the allegations set forth in Complaint paragraph 189.

190.    Deny the allegations set forth in Complaint paragraph 190.

191.    Lack knowledge and information sufficient to form a belief as to what GEICO estimates, admit an Exhibit 4 is attached to the Complaint, refers the Court to said Exhibit for what is contained therein, deny knowledge and information sufficient to form a belief to what

Exhibit 4 highlights or arises from, and deny all other allegations set forth in Complaint paragraph 191.

192.    Deny the allegations set forth in Complaint paragraph 192 except admit services rendered were in compliance with generally accepted practices in the profession and the law.

193.    Deny the allegations set forth in Complaint paragraph 193.

194.    Deny the allegations set forth in Complaint paragraph 194 except admit that PC Defendants were properly operated, lawfully licensed and eligible to bill for and collect No-Fault insurance benefits.

195.    Lack knowledge and information sufficient to form a belief to the allegations set forth in Complaint paragraph 195 except admit Dr. Kogen acted legally, ethically, honestly, with integrity, and in conformance with his professional oaths and pledges.

196.    Lack knowledge and information sufficient to form a belief to the allegations set forth in Complaint paragraph 196.

197.    Lack knowledge and information sufficient to form a belief as to what GEICO reasonably believed except admit abiding by the law and ethical obligations, deny all other allegations contained in Complaint paragraph 197 and state the burden was on GEICO to determine if treatments rendered were not medically necessary under the No-Fault law.

198.    Deny the allegations set forth in Complaint paragraph 198.

199.    Lack knowledge and information sufficient to form a belief as to what GEICO relied upon, deny material misrepresentations and admit valid documents were submitted to GEICO, and deny all other allegations set forth in Complaint paragraph 199.

200.    Deny the allegations set forth in Complaint paragraph 200.

201.     Deny the allegations set forth in Complaint paragraph 201 except admit Dr. Kogen was the sole shareholder, officer, and operator of just two professional service corporations both named as defendants herein, one of which is not currently providing psychological services, that provided appropriate psychological services to victims of motor vehicle accidents insured by GEICO under the New York State No-Fault Insurance Law in conformance with accepted practices in the profession and submitted valid No-Fault insurance claims to GEICO, a great majority of which GEICO failed to deny, pay or seek verification as required under the New York State No-Fault Law.

202.     Admit GEICO is required by law but yet fails to promptly process and pay legitimate insurance claims within thirty (30) days of presentment of the claim, lack knowledge and information sufficient to form a belief as to what GEICO relies upon, admit presenting valid documents to GEICO, and deny all other allegations set forth in Complaint paragraph 202.

203.     Deny the allegations set forth in Complaint paragraph 203 and state GEICO has been investigating the defendants since inception of the PC Defendants in or about 1998 and 1999, defendants have been open and forthcoming in their practices and with information legally and appropriately requested and in conformance with the No-Fault Law.

204.     Lack knowledge and information sufficient to form a belief as to what GEICO relies upon, admit that GEICO believes that any payment it makes on valid claims is to its detriment, admit receiving payments from GEICO and providing true and accurate information about psychological services, and deny all other allegations set forth in Complaint paragraph 204.

205.     Lack knowledge and information sufficient to form a belief as to what GEICO relies upon and the amount of money paid, and deny all other allegations set forth in Complaint paragraph 205.

206.     Deny the allegations set forth in Complaint paragraph 206.

207.     Admit an Exhibit 5 and Exhibit 6 are attached to the Complaint, lack knowledge and information sufficient to form a belief as to the amount of money paid by GEICO to Defendants and the accuracy of the information contained in said Exhibits, and deny all other allegations set forth in Complaint paragraph 207.

208.     Defendants incorporates herein by reference all paragraphs set forth herein above as if fully set forth herein.

209.     Deny the allegations set forth in Complaint paragraph 209.

210.     Deny the allegations set forth in Complaint paragraph 210.

211.     Lack knowledge and information sufficient to form a belief as to what was delivered to GEICO and deny all other allegations set forth in Complaint paragraph 211.

212.     Lack knowledge and information sufficient to form a belief as to the allegations set forth in Complaint paragraph 212.

213.     Lack knowledge and information sufficient to form a belief as to the allegations set forth in Complaint paragraph 213 except admit PC Defendants received payments from GEICO through the U.S. Mail for valid and legitimate claims and deny Dr. Kogen and Mr. Blumenthal received such payments.

214.     Deny the allegations set forth in Complaint paragraph 214 except admit the PC Defendants submitted valid no-fault insurance claims to GEICO for services properly and appropriately rendered.

215.     Lack knowledge and information sufficient to form a belief as to what GEICO reasonably relied upon and issued, and deny all other allegations set forth in Complaint paragraph 215.

216.     Deny the allegations set forth in Complaint paragraph 216.

217.     Complaint paragraph 217 is a legal conclusion, refer all questions of law to the Court and deny the allegations set forth therein.

218.     Complaint paragraph 218 is a legal conclusion, refer all questions of law to the Court, and deny the allegations set forth therein.

219.     Deny the allegations set forth in Complaint paragraph 219 except admit LMK received payments from GEICO from time to time for legitimate and appropriate services rendered under the New York State No-Fault Law.

220.     Complaint paragraph 220 is a legal conclusion, refer all questions of law to the Court, and deny the allegations contained therein.

221.     Complaint paragraph 221 is a legal conclusion, refer all questions of law to the Court, and deny the allegations contained therein.

222.     Complaint paragraph 222 is a legal conclusion, refer all questions of law to the Court, and deny the allegations contained therein.

223.     Deny the allegations set forth in Complaint paragraph 223.

224.     Lack knowledge and information sufficient to form a belief as to the allegations set forth in Complaint paragraph 224 except state that the New York State Department of Financial Services website does not list as an insurance company licensed to do business and issue automobile insurance policies in the State of New York an entity named "GEICO Casualty Insurance Company".

225.     Deny the allegations set forth in Complaint paragraph 225 and refer all questions of law to the Court.

226.     Defendants incorporates herein by reference all paragraphs set forth herein above as if fully set forth herein.

227.     Deny the allegations set forth in Complaint paragraph 227.

228.     Deny the allegations set forth in Complaint paragraph 228.

229.     Deny the allegations set forth in Complaint paragraph 229.

230.     Deny the allegations set forth in Complaint paragraph 230.

231.     Deny the allegations set forth in Complaint paragraph 231.

232.     Deny the allegations set forth in Complaint paragraph 232.

233.     Defendants incorporates herein by reference all paragraphs set forth herein above as if fully set forth herein.

234.     Deny the allegations set forth in Complaint paragraph 234.

235.     Deny the allegations set forth in Complaint paragraph 235.

236.     Lack knowledge and information sufficient to form a belief as to what were delivered to GEICO and deny all other allegations set forth in Complaint paragraph 236.

237.     Lack knowledge and information sufficient to form a belief as to the allegations set forth in Complaint paragraph 237.

238.     Deny the allegations set forth in Complaint paragraph 238 except admit LMK received payments from GEICO from time to time for legitimate and appropriate services rendered under the New York State No-Fault Law.

239.     Deny the allegations set forth in Complaint paragraph 239.

240.    Lack knowledge and information sufficient to form a belief as to what GEICO reasonably relied on and issued, and deny all other allegations set forth in Complaint paragraph 240.

241.    Deny the allegations set forth in Complaint paragraph 241.

242.    Complaint paragraph 242 is a legal conclusion, refer all questions of law to the Court, and deny the allegations contained therein.

243.    Complaint paragraph 243 is a legal conclusion, refer all questions of law to the Court, and deny the allegations contained therein.

244.    Deny the allegations set forth in Complaint paragraph 244 except admit Valley received payments from GEICO from time to time for legitimate and appropriate services rendered.

245.    Complaint paragraph 245 is a legal conclusion, refer all questions of law to the Court, and deny the allegations contained therein.

246.    Deny the allegations set forth in Complaint paragraph 246.

247.    Deny the allegations set forth in Complaint paragraph 247 and refer all questions of law to the Court.

248.    Deny the allegations set forth in Complaint paragraph 248.

249.    Lack knowledge and information sufficient to form a belief as to the allegations set forth in Complaint paragraph 249 except state that the New York State Department of Financial Services website does not list as an insurance company licensed to do business and issue automobile insurance policies in the State of New York an entity named "GEICO Casualty Insurance Company".

250.    Deny the allegations set forth in Complaint paragraph 250.

251.    Defendants incorporates herein by reference all paragraphs set forth herein above as if fully set forth herein.

252.    Deny the allegations set forth in Complaint paragraph 252.

253.    Deny the allegations set forth in Complaint paragraph 253.

254.    Deny the allegations set forth in Complaint paragraph 254.

255.    Deny the allegations set forth in Complaint paragraph 255.

256.    Deny the allegations set forth in Complaint paragraph 256.

257.    Deny the allegations set forth in Complaint paragraph 257.

258.    Defendants incorporates herein by reference all paragraphs set forth herein above as if fully set forth herein.

259.    Deny the allegations set forth in Complaint paragraph 259.

260.    Deny the allegations set forth in Complaint paragraph 260.

261.    Deny the allegations set forth in Complaint paragraph 261.

262.    Deny the allegations set forth in Complaint paragraph 262.

263.    Deny the allegations set forth in Complaint paragraph 263.

264.    Lack knowledge and information sufficient to form a belief as to what GEICO reasonably relied upon and deny all other allegations set forth in Complaint paragraph 264.

265.    Deny the allegations set forth in Complaint paragraph 265.

266.    Defendants incorporates herein by reference all paragraphs set forth herein above as if fully set forth herein.

267.    Lack knowledge and information sufficient to form a belief as to what GEICO reasonably believed, admit GEICO was legally obligated to pay LMK and Valley, and deny all other allegations set forth in Complaint paragraph 267

268.    Deny the allegations set forth in Complaint paragraph 268 except admit receiving payments from GEICO for proper and appropriate services rendered under the New York state No-Fault Law and voluntarily accepted said payments.

269.    Deny the allegations set forth in Complaint paragraph 269.

270.    Deny the allegations set forth in Complaint paragraph 270.

271.    Defendants incorporates herein by reference all paragraphs set forth herein above as if fully set forth herein.

272.    Deny the allegations set forth in Complaint paragraph 272 and refer all questions of law to the Court.

273.    Deny the allegations set forth in Complaint paragraph 273.

274.    Deny the allegations set forth in Complaint paragraph 274.

275.    Deny the allegations set forth in Complaint paragraph 275 except admit LMK and Valley shall bill GEICO for proper and appropriate services rendered pursuant to the No-Fault law.

276.    Admit GEICO is requesting relief, deny it is entitled to relief, and deny all other allegations set forth in Complaint paragraph 276.

## AS AND FOR A FIRST DEFENSE

277.    The Court lacks personal jurisdiction over one or more of the defendants.

## AS AND FOR A SECOND DEFENSE

278.    The Court lacks subject matter jurisdiction.

## AS AND FOR A THIRD DEFENSE

279.    United States District Court, Eastern District of New York, is improper venue.

## AS AND FOR A FOURTH DEFENSE

280.    Process is insufficient.

## AS AND FOR A FIFTH DEFENSE

281.    Service of process is insufficient on one or more of the defendants.

## AS AND FOR A SIXTH DEFENSE

282.    Plaintiffs fail to state a claim upon which relief can be granted.

## AS AND FOR A SEVENTH DEFENSE

283.    Plaintiffs' claims are precluded and void by the doctrine of accord and satisfaction.

## AS AND FOR AN EIGHTH DEFENSE

284.    Plaintiffs' claims are precluded and void by the doctrines of estoppel and *res judicata.*

## AS AND FOR A NINTH DEFENSE

285.    Plaintiffs' claims are precluded and void by plaintiffs' fraudulent  and illegal conduct and omissions.

## AS AND FOR A TENTH DEFENSE

286.    Plaintiffs' claims are currently being prosecuted in legal forums other than the United States District Court, Eastern District of New York.

## AS AND FOR AN ELEVENTH DEFENSE

287.    Plaintiffs' have unclean hands.  The principles of equity precludes Plaintiffs' recovery,

## AS AND FOR A TWELFTH DEFENSE

288.    Plaintiffs' claims are precluded and void through the doctrine of laches.

## AS AND FOR A THIRTEENTH DEFENSE

289.   Plaintiffs' claims are precluded and void through settlement, compromise and release.

## AS AND FOR A FOURTEENTH DEFENSE

290.   Plaintiffs' claims are precluded and void by applicable statute of limitations.

## AS AND FOR A FIFTEENTH DEFENSE

291.   Plaintiffs' claims have been waived.

## AS AND FOR AN SIXTEENTH DEFENSE

292.   An award in favor of the Plaintiff's would unjustly enrich the Plaintiffs.

## AS AND FOR A SEVENTEENTH DEFENSE

293.   Plaintiffs conspired among themselves and with third parties, such as persons who upon receipt or promise of payment from the Plaintiffs, to conduct peer reviews with predetermined outcomes in favor of Plaintiffs, to perpetrate and /or perpetrated a scheme to defraud one or more Defendants, their policyholders and beneficiaries, medical providers and the public in general, through the United States Mail, wire and otherwise, in violation of New York State and Federal law.

## AS AND FOR AN EIGHTEENTH DEFENSE

294.   One or more Plaintiffs is not properly and legally licensed, and/or is not legally doing business and/or selling insurance in New York State.

## AS AND FOR A NINETEENTH DEFENSE

295.   Plaintiffs failed to satisfy one or more conditions precedent before commencing this action.  Plaintiffs failed to follow the prescriptions of the New York State No-Fault Law (NY Ins. Law § 5101 *et seq.*) and the regulations promulgated thereunder, particularly, but not

necessarily limited to, the 30-day rule that requires insurance companies, such as the Plaintiffs, to either properly deny, seek verification and/or pay claims within tightly-timed procedure prior to the commencement of a legal action.

## AS AND FOR A TWENTIETH DEFENSE

296.    The question of medical necessity is an opinion of medical professionals and not a basis for fraud.

## AS AND FOR A TWENTY-FIRST DEFENSE

297.    At all relevant times, Defendants conduct and omissions, if any, were open and obvious to the Plaintiffs, and was or could have been discovered with due diligence and/or reasonable inquiry concurrently and/or contemporaneously with the happening of the alleged conduct and/or omission, as is Plaintiffs' burden under the New York State No-Fault Law and the doctrine of fraud.

## AS AND FOR A TWENTY-SECOND DEFENSE

298.    Plaintiffs' inference that PC Defendants' services are not medically necessary on the premise that Dr. Kogen does not physically see each PC Defendants' patient is precluded and void by Plaintiffs' reliance on peer reviews conducted by persons who never physically see PC Defendants' patients and render a predetermined opinion adverse to the PC Defendants' opinion.

## AS AND FOR A TWENTY-THIRD DEFENSE

299.    Claims at bar have been previously adjudicated in other forums.

## AS AND FOR A TWENTY-FOURTH DEFENSE

300.    Dr. Kogen is legally licensed to practice psychology in the State of New York as a psychologist, PC Defendants' sole shareholder, and officer, and controls all material aspects of PC Defendants' operations.

## AS AND FOR A TWENTY-FIFTH DEFENSE

301.    Plaintiffs' claims are precluded and void by Plaintiffs' violations of New York State's Fair Claims Settlement law (NY Ins. Law § 5106) and the regulations promulgated thereunder.

## AS AND FOR A TWENTY-SIXTH DEFENSE

302.    All services billed to Plaintiff were properly, appropriately and ethically rendered, in conformance with accepted practice in the profession.

## AS AND FOR A TWENTY-SEVENTH DEFENSE

303.    Defendants never employed, offered or represented to offer the services of a psychiatrist.

## AS AND FOR A TWENTY-EIGHTH DEFENSE

304.    Plaintiff GEICO Casualty Insurance Company is an improper party to this action.

## AS AND FOR A TWENTY-NINTH DEFENSE

305.    New York State Insurance Law § 403(d) does not provide or authorize a private right of recovery and litigation.

## AS AND FOR A THIRTIETH DEFENSE

306.    This Court lacks jurisdiction to declare PC Defendants have no standing to submit or receive assigned No-Fault benefits for claims submitted for services provided into the future and after the commencement of this action since this action does not encompass and cannot encompass or foresee future practice.

**COUNTERCLAIMS BY DEFENDANTS AGAINST GEICO AND DEFENDANTS ON THE COUNTERCLAIMS, MICHAEL H. ROSENFELD, PH.D., FRANKLIN A. PORTER, PH.D., SCS SUPPORT CLAIMS SERVICES, INC., EMPIRE STAT MED REVIEW, P.C. and EMPIRE STAT GROUP, LLC (hereinafter known collectively as "Counterclaim Defendants")**

**The Parties**

307.     Defendants Jonathan Kogen, Ph.D., Valley Psychological, P.C. (hereinafter known individually as "Valley"), LMK Psychological P.C. (hereinafter known individually as "LMK") and Andrew Blumenthal (all collectively hereinafter known as "Defendants") repeat and reallege each and every paragraph set forth above as if fully set forth herein.

308.     At all relevant times herein, Valley and LMK have been and are professional corporations duly licensed and authorized to do business in the State of New York.

309.     Valley and LMK offer psychological services in multidisciplinary medical clinics under and pursuant to the New York State No-Fault Law (NY Ins. Law § 5101 *et seq.* and the regulations promulgated thereunder, 11 NYCRR § 65 *et seq.*) to persons involved in motor vehicle accidents in New York State.

310.     Valley and LMK's principal place of business as listed with the New York State Department of State is the City of Albany, County of Albany, State of New York.

311.     Jonathan Kogen, Ph. D. is a licensed psychologist authorized to practice psychology in the State of New York with residency in Great Barrington, Massachusetts and at all times is and was Valley and LMK's sole shareholder and officer.

312.     As Valley and LMK's sole shareholder and officer, Jonathan Kogen, Ph.D. controls all material aspects of PC Defendants' operations.

313.     Andrew Blumenthal is an independent contractor hired by Valley and LMK as their business manager.

314.     Upon information and belief, Plaintiff Government Employees Insurance Company is a foreign corporation, wholly owned by and under the control of Berkshire Hathaway Inc., authorized to do business in the State of New York, incorporated in the state of Maryland, with a principal place of business listed with the New York State Department of Financial Services as One GEICO Plaza, Washington, D.C.  Said Plaintiff has authorized the New York State Superintendent of Insurance to accept service of process under the New York State Insurance Law § 1212(a).

315.     Upon information and belief, Plaintiff GEICO General Insurance Company is a foreign corporation, wholly owned by and under the control of Berkshire Hathaway Inc., authorized to do business in the State of New York, incorporated in the state of Maryland, with a principal place of business listed with the New York State Department of Financial Services as One GEICO Plaza, Washington, D.C.  Said Plaintiff has authorized the New York State Superintendent of Insurance to accept service of process under the New York State Insurance Law § 1212(a).

316.     Upon information and belief, Plaintiff GEICO Indemnity Company is a foreign corporation, wholly owned by and under the control of Berkshire Hathaway Inc., authorized to do business in the State of New York, incorporated in the state of Maryland, with a principal place of business listed with the New York State Department of Financial Services as One GEICO Plaza, Washington, D.C.  Said Plaintiff has authorized the New York State Superintendent of Insurance to accept service of process under the New York State Insurance Law § 1212(a).

317.     New York State Department of Financial Services does not list Plaintiff GEICO Casualty Insurance Company as an insurance company authorized to do or doing-business in the

State of New York.  Upon information and belief, if said insurance company exists, it is wholly

owned by and under the control of Berkshire Hathaway Inc., incorporated in the state of

Maryland, with a principal place of business at One GEICO Plaza, Washington, D.C.

318.     Each of the aforementioned Plaintiffs, hereinafter collectively known as

"GEICO", provides, sells, and advertises motor vehicle insurance services and policies, and

conducts business including but not limited to the processing of No-Fault insurance benefit

claims, verifications and denials of those claims, nationwide, in New York State, and across state

lines through the United States mail, other delivery carriers, and by wire.

319.     Upon information and belief, Counterclaim Defendant Michael H. Rosenfeld,

Ph.D., (hereinafter known as "Rosenfeld") is a psychologist licensed to practice psychology in

New York State with principal place of business at 72 Jericho Turnpike, Suite 11, Mineola, New

York 11501.

320.     Upon information and belief, Counterclaim Defendant Franklin A. Porter, Ph.D.,

(hereinafter known as "Porter") is a psychologist licensed to practice psychology in New York

State with principal place of business at 5 West 86th Street, New York, New York 10024.

321.     Rosenfeld and Porter derive monetary income from the activity of producing and

transmitting peer review reports of medical records, evaluations and diagnoses, through the

United States mail, other delivery carriers, and wire to insurance carriers in general and GEICO

in particular, directly and through third-parties.

322.     Upon information and belief, Counterclaim Defendant Advanced Psychological

Evaluations P.C. (hereinafter known as "Advanced") is an active domestic business corporation

authorized to do business in New York State with principal place of business at 816 Hempstead

Turnpike, Suite A, Franklin Square, New York 11010.

323.    Upon information and belief, Counterclaim Defendant SCS Support Claim Services, Inc. (hereinafter known as "SCS") is an active domestic business corporation authorized to do business in New York State with principal place of business at 125 Baylis Rd., Ste 290, Melville, New York, 11747.

324.    Upon information and belief, Counterclaim Defendants Empire Stat Med Review, P.C. and Empire Stat Group, L.L.C. (hereinafter collectively known as "Empire") are active domestic professional corporation and limited liability corporation, respectively, authorized to do business in New York State with the principal place of business at 19 East 34th Street, Suite 423, New York, New York, 10001.

325.    Advanced, SCS and Empire derive monetary income through the receipt and transmission via the United States mail, other delivery carriers, and wire of medical records, evaluations and diagnoses, and peer review reports from and to insurance carriers in general and GEICO in particular, and persons who conduct peer reviews in general and Rosenfeld and Porter in particular.

### JURISDICTION AND VENUE

326.    Jurisdiction over the counterclaims is conferred by 28 U.S.C. §§ 1331, 1332, 18 USC § 1965 and Fed. R. Civ. P. Rules 13, 19 and/or 20.

327.    Supplemental jurisdiction over the state law counterclaims is proper pursuant to 28 U.S.C. § 1367.

328.    Venue is proper pursuant to 28 U.S.C. § 1391(a)(2) and (c) whereas one or more Counterclaim Defendants reside and wrongful acts and omissions of the Counterclaim Defendants and GEICO alleged herein with particularity were carried out in the Eastern District of New York.

## COUNTERCLAIM COUNT I AGAINST GEICO
### (Violations of the New York State No-Fault Law)

329.     Defendants repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

330.     Patients presenting to PC Defendants for medical services were, upon information and belief, involved in automobile accidents.

331.     Upon information and belief, said patients were entitled to receive personal injury protection coverage for injuries sustained in covered accidents through policies of insurance issued by GEICO.

332.     Valley or LMK provided psychological services to each patient for injuries sustained in the covered accidents.

333.     Each patient executed an assignment of rights and benefits to Valley or LMK for recovery of money for services provided pursuant to the automobile insurance policies.

334.     Either Valley or LMK billed GEICO for services provided to each patient.

335.     GEICO neither paid nor denied billing for services rendered to each patient as prescribed by the New York State "No-Fault" Insurance Law and the regulations promulgated thereunder.

336.     GEICO did not seek verification of the billing for services rendered to each patient as prescribed by the New York State "No-Fault" Insurance Law and the regulations promulgated thereunder.

337.     PC Defendants are entitled to payment from GEICO for services rendered relating to the applicable accident to each patient in an approximate aggregate amount of One Million Seventy Six Thousand Five Hundred Seventy Five Dollars ($1,076,575.00) plus interest and

attorneys' fees as provided by the No-Fault Law, to be accurately fixed by the Court, plus statutory interest, attorney fee, costs and disbursements of this action.

**COUNTERCLAIM COUNT II AGAINST GEICO**
**(Violations of New York State No-Fault Law)**

338.    Defendants repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

339.    LMK and Valley's services rendered to patients insured by GEICO conformed to accepted practices in the profession.

340.    GEICO denied payment for services rendered to certain patients insured by GEICO.

341.    GEICO's denials are improper, untimely, ineffective, insufficiently specific, lack proper medical rationale accepted in the profession and/or otherwise violate the prescriptions of New York State's "No-Fault" Insurance Law.

342.    PC Defendants are entitled to payment from GEICO for services rendered relating to the applicable accident to each patient in an approximate aggregate amount of One Million Seventy Six Thousand Five Hundred Seventy Five Dollars ($1,076,575.00) plus interest and attorneys' fees as provided by the No-Fault Law, to be accurately fixed by the Court, plus statutory interest, attorney fee, costs and disbursements of this action.

**COUNTERCLAIM COUNT III AGAINST GEICO**
**(Violation of NY Ins. Law § 5106 and the tort of bad faith)**

343.    Defendants repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

344.    GEICO's' repeated failures to properly administer no-fault claims as prescribed by the New York State "No-Fault" Insurance Law and the regulations promulgated thereunder constitute a continuing course of GEICO's business practices.

345.    GEICO's repeated failures to properly administer plaintiff's no-fault claims as prescribed by the New York State "No-Fault" Insurance Law and the regulations promulgated thereunder constitute an intentional and calculated course of GEICO's business practices.

346.    GEICO's repeated failures to properly administer no-fault claims as prescribed by the New York State "No-Fault" Insurance Law and the regulations promulgated thereunder constitute a routine course of GEICO's business practices.

347.    GEICO's repeated failures to properly administer no-fault claims as prescribed by the New York State "No-Fault" Insurance Law and the regulations promulgated thereunder have no rational basis and constitute unreasonable conduct distinct from and contrary to its contractual and legal obligations.

348.    GEICO's repeated failures to properly administer no-fault claims as prescribed by the New York State "No-Fault" Insurance Law and the regulations promulgated thereunder violate the public interest in seeing a contractual obligation performed with reasonable care in general and the personal injury protection provision of the insurance policy in particular.

349.    GEICO's repeated failures to properly administer no-fault claims as prescribed by the New York State "No-Fault" Insurance Law and the regulations promulgated thereunder violate the No-Fault Law's stated purpose of prompt resolution of no-fault claims.

350.    GEICO's repeated failures to properly administer no-fault claims as prescribed by the New York State "No-Fault" Insurance Law and the regulations promulgated thereunder

constitute conduct outside the insurance policies' requirements and are intended to defeat the policies in general and the personal injury protection provision in particular.

351.    GEICO's repeated failures to properly administer no-fault claims as prescribed by the New York State "No-Fault" Insurance Law and the regulations promulgated thereunder constitute disingenuous and dishonest conduct on GEICO's part to carry out its policy obligations in general and the personal injury protection provision in particular.

352.    GEICO's repeated failures to properly administer no-fault claims as prescribed by the New York State "No-Fault" Insurance Law and the regulations promulgated thereunder are intended to harass PC Defendants and parties similarly situated as the PC Defendants, delay and avoid payment of valid claims, discourage and interfere with PC Defendants and parties similarly situated from entering into assignments with victims of no-fault accidents insured by GEICO for benefits under GEICO's insurance policies in exchange for medical treatment, discourage PC Defendants and parties similarly situated from treating victims of no-fault accidents and beneficiaries of GEICO's insurance policies in detriment to PC Defendants, parties similarly situated, victims of no-fault accidents, the public in general and defeat public policy of fair and prompt claims settlement.

353.    GEICO's repeated failures to properly administer no-fault claims as prescribed by the New York State "No-Fault" Insurance Law and the regulations promulgated thereunder constitute a scheme and pattern of egregious conduct towards the public in general and the PC Defendants in particular.

354.    GEICO's repeated failures to properly administer no-fault claims as prescribed by the New York State "No-Fault" Insurance Law and the regulations promulgated thereunder

constitute conduct actionable as a tort independent from GEICO's contractual obligations in general and obligations under the personal injury protection provision in particular..

355.    GEICO's repeated failures to properly administer no-fault claims as prescribed by the New York State's "No-Fault" Insurance Law and the regulations promulgated thereunder include, and are not necessarily limited to, those claims set forth in Plaintiffs' Exhibits 1, 3 and 4 attached to the Complaint and Exhibit A attached hereto, which are incorporated herein by reference.

356.    GEICO's repeated failures to properly administer no-fault claims as prescribed by the New York State "No-Fault" Insurance Law and the regulations promulgated thereunder constitute violation of NY Ins. Law § 5106 (Fair Claims Settlement) and the tort of bad faith.

357.    As a result of GEICO's aforementioned conduct, PC Defendants are entitled to actual, consequential and punitive damages from the Plaintiffs in an amount to be set by the Court and of sufficient severity to deter similar conduct by the Plaintiffs in the future which PC Defendants suggest to be triple the amount of each claim, interest and attorney's fees granted by this Court under each Count of these Counterclaims.

### COUNTERCLAIM COUNT IV AGAINST GEICO
### (Interference With Business, Medical And Contractual Relations)

358.    Defendants repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

359.    GEICO's aforementioned conduct constitutes interference with business, medical and contractual relations.

360.    GEICO's aforementioned conduct constitutes intentional interference with past, present, and prospective assignments of insurance benefits entered into by victims of no-fault accidents with PC Defendants and similarly situated parties in exchange for medical services,

including but not necessarily limited to each of those assignments entered between PC defendants and GEICO's insureds named and under the claim numbers listed in Exhibits 1, 3, 4, 5 and 6 attached to the Complaint and Exhibit A attached hereto, which are incorporated herein by reference.

361.     GEICO's aforementioned conduct is intended to defeat the assignments, and discourage the PC Defendants from entering into future assignments and offering any and further services to current and prospective patients insured by GEICO.

362.     As a result of GEICO's aforementioned conduct, PC Defendants are entitled to actual, consequential and punitive damages from the Plaintiffs in an amount to be set by the Court and of sufficient severity to deter similar conduct by the Plaintiffs in the future which PC Defendants suggest to be triple the amount of each claim, interest and attorney's fees granted by this Court under each Count of these Counterclaims.

## COUNTERCLAIM COUNT V AGAINST GEICO
### (Violation of NY Ins. Law § 5106 and the torts of bad faith)

363.     Defendants repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

364.     New York State No-Fault Law and regulations promulgated thereunder prohibit an insurer from routinely demanding verification of no-fault claims without good reason.

365.     Said prohibition is a duty imposed by law to avoid causing injury to GEICO's insureds and injured persons in general, and the PC Defendants in particular.

366.     GEICO routinely demands verification as part of its routine administrative practice of PC Defendants' no-fault claims and, upon information and belief, other assignee health care providers' no-fault claims.

367.    GEICO's routine demands for verification of no-fault claims have no rational basis and constitute intentional and unreasonable conduct distinct from its contractual obligations.

368.    GEICO's routine demands for verification of no-fault claims are without good reason.

369.    GEICO's routine demands for verification of no-fault claims violate the public interest in seeing a contractual obligation performed with reasonable care.

370.    GEICO's routine demands for verification of no-fault claims violate the No-Fault Law's stated purpose of prompt resolution of no-fault claims.

371.    GEICO's routine demands for verification of no-fault claims constitute conduct outside the insurance policies' requirements and are intended to defeat the policies.

372.    GEICO's routine demands for verification of no-fault claims constitute disingenuous and dishonest conduct on GEICO's part to carry out its policy obligations.

373.    GEICO's routine demands for verification of no-fault claims are intended solely to harass PC Defendants and parties similarly situated as the PC Defendants, delay and avoid payment of valid claims, discourage and interfere with PC Defendants and parties similarly situated from entering into assignments with victims of no-fault accidents insured by and for benefits under GEICO's insurance policies in exchange for medical treatment, and discourage PC Defendants and parties similarly situated from treating victims of no-fault accidents and beneficiaries of GEICO's insurance policies in detriment to PC Defendants, parties similarly situated, victims of no-fault accidents, the public in general and public policy.

374.     GEICO's routine demands for verification constitute a pattern of egregious conduct towards the public, GEICO's insureds and injured persons in general, and the PC Defendants in particular.

375.     GEICO's routine demands for verification constitute conduct actionable as a tort independent from GEICO's contractual obligations.

376.     GEICO's routine demands for verification constitute violations of NY Ins. Law § 5106 (Fair Claims Settlement) and the tort of bad faith.

377.     GEICO's routine demands for verification include but are not necessarily limited to those claims set forth in Plaintiff's Exhibit 4 attached to the Complaint, which is incorporated herein by reference.

378.     In addition to those claims set forth in Plaintiff's Exhibit 4 attached to the Complaint, GEICO's routine demands for verification include but are not necessarily limited to those claims set forth in Exhibit A attached hereto, which is incorporated herein by reference.

379.     As a result of GEICO's routine demands for verification, PC Defendants are entitled to actual, consequential and punitive damages from the Plaintiffs in an amount to be set by the Court and of sufficient severity to deter similar conduct by the Plaintiffs in the future which PC Defendants suggest triple the amount of each claim, interest and attorney's fees granted by this Court u under each Count of these Counterclaims.

## COUNTERCLAIM COUNT VI AGAINST GEICO
### (Interference with Business, Medical and Contractual Relations)

380.     Defendants repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

381.     GEICO's routine demands for verification constitute interference with business, medical and contractual relations.

382.     GEICO's aforementioned conduct constitutes intentional interference with past, present, and prospective assignments of insurance benefits entered into and/or would be entered into by victims of no-fault accidents with PC Defendants and similarly situated parties in exchange for medical services, including but not necessarily limited to each of those assignments entered between PC defendants and GEICO's insureds named and under the claim numbers listed in Exhibit 4 attached to the Complaint and Exhibit A attached hereto, which are incorporated herein by reference.

383.     As a result of GEICO's aforementioned conduct, PC Defendants are entitled to actual, consequential and punitive damages from the Plaintiffs in an amount to be set by the Court and of sufficient severity to deter similar conduct by the Plaintiffs in the future which PC Defendants suggest to be triple the amount of each claim, interest and attorney's fees granted by this Court under each Count of these Counterclaims.

## COUNTERCLAIM COUNT VII AGAINST GEICO
**(Violations of the Racketeer Influenced and Corrupt Organization Act, 18 U.S.C. § 1961 *et seq.*; hereinafter known as "RICO")**

384.     Defendants repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

385.     PC Defendants relied upon GEICO's explicit and/or implicit representation, by virtue of conducting business and providing No-Fault insurance policies in New York State, and being authorized by New York State to do so, that GEICO would abide by the laws of New York State in general and the No-Fault law in particular, and process PC Defendants' claims fairly and lawfully, without interfering in PC Defendants' business and relationships to provide psychological services to those in need and/or who may request it under New York State's No-Fault Law.

386.    GEICO's intentional misrepresentations to fairly and lawfully process said claims is calculated solely for its pecuniary gain to the detriment of the public, PC Defendants, parties similarly situated, and victims of no-fault motor vehicle accidents in general and those insured by GEICO in particular.

387.    GEICO's intentional misrepresentations to fairly and lawfully process said claims is calculated solely for its pecuniary gain and to deceive the courts and arbiters who rely on GEICO's misrepresentations to adjudicate no-fault insurance claims.

388.    Each Plaintiff, including and not limited to each Plaintiff's Special Investigations Unit, conspired with the other to violate 18 U.S.C. § 1962(c) by agreeing with each other to routinely demand verification from the PC Defendants in order to delay and/or avoid the payment of valid no-fault insurance claims for their own financial gain and for the purpose of increasing PC Defendants costs of and discourage PC Defendants from providing services to no-fault accident victims in general and to GEICO insured beneficiaries in particular, to the detriment of the public, PC Defendants and similarly situated parties, victims of no-fault motor vehicle accidents in general and those insured by GEICO in particular, and solely for GEICO's financial gain.

389.    Each Plaintiff employed one or more mailings through United States mail or other delivery carriers, and wire transmissions to routinely demand verification of valid no-fault insurance claims, including, and not limited to, those claims identified on Exhibit 4 of Plaintiffs' Complaint and Exhibit A attached hereto, on or about those dates listed in those Exhibits, which are incorporated herein by reference.

390.    Upon each Plaintiff's receipt of the claims itemized in, but not necessarily limited to, Exhibit 4 of Plaintiffs' Complaint and Exhibit A attached hereto, each Plaintiff would

transmit to PC Defendants, either by United States mail, facsimile or electronic mail, routine demands for verification of the claims on or about those dates listed in those Exhibits, which are incorporated herein by reference.

391.    Upon receipt of each Plaintiff's routine demand for verification, PC Defendants would provide verification or other response to each Plaintiff via United States mail, facsimile or electronic mail, on or after, but not necessarily limited to, the dates listed on Exhibit 4 of the Complaint and Exhibit A attached hereto under the columns entitled "Date of Verification Request" and "Date of Verification Received".

392.    As a result of Plaintiffs' conspiracy and pattern of fraudulently demanding verification on valid no-fault insurance claims, Plaintiffs have unjustly retained funds that should have been paid to the PC Defendants resulting in a detrimental effect on PC Defendants and their medical practices.

393.    PC Defendants are in the business of providing psychological services to, *inter alia*, beneficiaries of No-Fault Insurance policies.

394.    Plaintiffs' scheme of unjustly seeking verification of valid claims have a deleterious impact on PC Defendants' overall financial well-being and adversely affect costs of psychological services to the public in general and beneficiaries of GEICO's insurance policies in particular.

395.    Plaintiffs' scheme of unjustly seeking verification of valid claims interferes with PC defendants business, medical and contractual relations with victims of no-fault accidents and beneficiaries of No-Fault insurance policies, as set forth herein above.

396.    Plaintiffs' fraudulent demands for verification through the U.S. mail and wire constitute indictable offenses pursuant to 18 U.S.C. §§ 1341 and 1343.

397.    By transmitting numerous fraudulent demands for verification through U.S. mail and wire, Plaintiffs engage in a pattern of racketeering activity within the meaning of 18 U.S.C. § 1962(c).

398.    Plaintiffs' wrongful conduct alleged herein had and continues to have a direct effect of enriching the Plaintiffs through their retention of funds that rightfully belong to the PC Defendants.

399.    Each Plaintiff is an enterprise engaged in and whose activities affect interstate commerce.

400.    The PC Defendants are "persons" as defined by 18 U.S.C. § 1961(3).

401.    Plaintiffs' conduct is a direct and proximate cause of PC Defendants' injuries.

402.    By virtue of Plaintiffs' violations of 18 U.S.C. § 1962(c), PC Defendants are entitled to recover from Plaintiffs, jointly and severally, treble damages sustained, including interest and attorney's fees allowed under the No-Fault Law, in an amount to be fixed by the Court plus attorneys fees associated with and costs and disbursements of this action.

**COUNTERCLAIM COUNT VIII**
**AGAINST GEICO AND COUNTERCLAIM DEFENDANTS ROSENFELD, PORTER,**
**ADVANCED, SCS AND EMPIRE**
**(Violations of RICO)**

403.    Defendants repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

404.    As part of GEICO's routine practice of verifying PC Defendant's valid no-fault claims, GEICO transmits or causes to be transmitted via U.S. mail and/or wire no-fault insurance claims, test results, diagnoses, and supporting medical documentation to Rosenfeld and Porter, directly and/or through Advanced, SCS and Empire, requesting Rosenfeld and Porter to conduct peer reviews on said claims, test results, diagnoses and supporting medical documentation.

405.    GEICO transmits or causes to be transmitted via U.S. mail and/or wire no-fault insurance said claims, test results, diagnoses, and supporting medical documentation on or about the dates listed in Exhibit 4 attached to the Complaint and Exhibit A attached hereto column entitled "Date Verification Received", which are incorporated herein by reference.

406.    Said peer reviews are conducted pursuant to a pre-determined protocol that is not tailored to the test results, diagnoses, supporting medical documents and reasonable needs of the individual patients for which the claims are submitted.

407.    Said peer reviews are conducted pursuant to a pre-determined protocol that is not in conformance with accepted practice in the profession.

408.    Said peer reviews are conducted pursuant to a pre-determined protocol that is intentionally designed to establish reason to deny each no-fault insurance claim in general, and particularly those of the PC Defendants, in whole or in part, for the sole purpose to avoid and/or minimize payments on said claims, maximize income to GEICO and the Counterclaim Defendants, despite the validity of the claims and services rendered thereunder, accepted practices in the profession, and the needs of individual patients for whom the claims are submitted.

409.    GEICO's arrangement and agreement with the Counterclaim Defendants, explicitly and/or implicitly, mandates peer reviews to establish reasons to deny no-fault insurance claims in general, and particularly those of the PC Defendants, in exchange for continuing business and monetary compensation.

410.    Said peer reviews are fraudulent because they are unwarranted in the first place and follow a predetermined protocol designed to deprive the PC Defendants of income and their patients of necessary psychological services that conform to practice in the profession.

411.    Rosenfeld and Porter transmit said fraudulent peer review reports via U.S. mail, other delivery carriers and/or wire directly to GEICO and/or through Advanced, SCS and Empire on or about, but not necessarily limited to, those dates listed in Exhibit 4 attached to the Complaint and Exhibit A attached hereto column entitled "Date of Peer Review", which are incorporated herein by reference.

412.    GEICO transmits said peer review reports, and denials fraudulently produced upon those peer reviews, to PC Defendants through U.S. mail, other delivery carriers and/or wire on or about, but not necessarily limited to, those dates listed in Exhibit 4 attached to the Complaint and Exhibit A attached hereto column entitled "Date of Denial", which are incorporated herein by reference.

413.    The transmission of GEICO's peer review requests and the peer review reports have occurred on numerous occasions, including, but not necessarily limited to, for each of those claims on or about each date set forth in Exhibit 4 of the Complaint and Exhibit A attached hereto, which are incorporated herein by reference, are sufficient to satisfy the element of a pattern as defined under RICO and in violation of 18 U.S.C. § 1962(c) and (d) particularly.

414.    GEICO, Advanced, SCS and Empire are defined individually as "enterprises" and, along with Rosenfeld and Porter, are defined individually as a "person" under RICO.

415.    The PC Defendants are persons as defined by 18 U.S.C. § 1961(3).

416.    GEICO and the Counterclaim Defendants' conduct is a direct and proximate cause of PC Defendants injuries.

417.    GEICO and Counterclaim Defendants' conduct is relied upon by PC defendants for the purposes of entering into assignments with and providing services to victims of no-fault accidents in general and beneficiaries of GEICO insurance policies in particular.

418. GEICO and Counterclaim Defendants' conduct is intended to deceive, directed towards and is relied upon by PC Defendants into believing most if not all no-fault insurance claims submitted to GEICO would be denied upon false peer review reports with the results intended to discourage PC Defendants from treating no-fault patients in general and beneficiaries of GEICO insurance policies in general.

419. GEICO and Counterclaim Defendants' deceit is intended to deceive, and directed towards the courts and arbiters who rely on fraudulent peer review reports to adjudicate no-fault insurance claims of PC Defendants and those similarly situated.

420. The courts and arbiters are persons as defined by 18 U.S.C. § 1961(3).

421. By virtue of GEICO's and Counterclaim Defendants' violations of 18 U.S.C. § 1962(c), PC Defendants are entitled to recover from GEICO and Counterclaim Defendants, jointly and severally, treble damages sustained, including interest and attorney's fees allowed under the No-Fault Law, in an amount to be fixed by the Court plus attorneys fees associated with and costs and disbursements of this action.

## COUNTERCLAIM COUNT IX
### AGAINST COUNTERCLAIM DEFENDANTS ROSENFELD, ADVANCED AND SCS
#### (Violations of RICO)

422. Defendants repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

423. As part of GEICO's routine practice of verifying PC Defendant's valid no-fault claims, SCS and Advanced transmit or cause to be transmitted via U.S. mail and/or wire no-fault insurance claims, test results, diagnoses, and supporting medical documentation to Rosenfeld and Rosenfeld to conduct peer reviews on said claims, test results, diagnoses and supporting medical documentation.

424.    SCS and Advanced transmit or cause to be transmitted via U.S. mail and/or wire no-fault insurance said claims, test results, diagnoses, and supporting medical documentation on or about, but not necessarily limited to, the dates listed in Exhibit 4 attached to the Complaint and Exhibit A attached hereto column entitled "Date Verification Received", which are incorporated herein by reference.

425.    Rosenfeld conducts peer review upon receipt of said requests, and produce peer review reports that he transmits or causes to be transmitted via U.S. mail and/or wire to GEICO directly or through Advanced and/or SCS.

426.    The transmission of said peer review requests and the peer review reports have occurred on numerous occasions, including, but not necessarily limited to, for each of those claims on or about each date set forth in Exhibit 4 of the Complaint and Exhibit A attached hereto columns entitled "Date Verification Received" and "Date of Peer Review", which are incorporated herein by reference and sufficient to satisfy the element of a pattern as defined under RICO and in violation of 18 U.S.C. § 1962(c) and (d) particularly.

427.    Advanced,  SCS and Rosenfeld conspire with each other to produce false peer review reports.

428.    Advanced, SCS and Rosenfeld's arrangement and agreement with each other, explicitly and/or implicitly, mandates peer reviews to establish reasons to deny no-fault insurance claims in general, and particularly those of the PC Defendants, with the knowledge that the fraudulent peer review reports would be used and relied upon by GEICO to deny no-fault insurance claims, in exchange for continuing business and monetary compensation, to the detriment of PC Defendants and the beneficiaries of No-Fault insurance claims in general and GEICO's policies in particular.

429.     Advanced, SCS and Rosenfeld's arrangement and agreement with each other, explicitly and/or implicitly, mandates peer reviews to establish reasons to deny no-fault insurance claims in general, and particularly those of the PC Defendants, with the knowledge that the fraudulent peer review reports would be used and relied upon by courts and arbiters to adjudicate no-fault claims in detriment to the PC Defendants.

430.     Said peer reviews are conducted and peer review reports are created pursuant to a pre-determined protocol that is not tailored to the test results, diagnoses, supporting medical documents and reasonable needs of the individual patients for which the claims are submitted.

431.     Said peer reviews are conducted and reports created pursuant to a pre-determined protocol that is not in conformance with accepted practice in the profession.

432.     Said peer reviews are conducted and reports created pursuant to a pre-determined protocol that is intentionally designed to establish reason to deny each no-fault insurance claim in general, and particularly those of the PC Defendants, in whole or in part, for the purpose to avoiding and/or minimizing payments on said claims, maximize income to GEICO and the Counterclaim Defendants, despite the validity of the claims and services rendered thereunder, accepted practices in the profession, and the needs of individual patients for whom the claims are submitted.

433.     GEICO relies upon said false peer review reports to deny claims for no-fault insurance benefits submitted by the PC Defendants and others similarly situated despite the validity of the claims and services rendered thereunder, accepted practices in the profession, and the needs of individual patients for whom the claims are submitted.

434.     Advanced, SCS and Rosenfeld at all relevant times knew and/or should know that GEICO would rely on their false reports to adjudicate no-fault insurance claims of and in detriment to PC Defendants and those similarly situated.

435.     Courts and arbiters rely on Advanced, SCS and Rosenfeld's false reports to adjudicate no-fault insurance claims of and in detriment to PC Defendants and those similarly situated.

436.     Advanced, SCS and Rosenfeld at all relevant times knew and/or should know that courts and arbiters rely on their false reports to adjudicate no-fault insurance claims of and in detriment to PC Defendants and those similarly situated.

437.     By virtue of Advanced, SCS and Rosenfeld's violations of 18 U.S.C. § 1962(c), PC Defendants are entitled to recover from Advanced, SCS and Rosenfeld, jointly and severally, treble damages sustained, including interest and attorney's fees allowed under the No-Fault Law, in an amount to be fixed by the Court plus attorneys fees associated with and costs and disbursements of this action.

## COUNTERCLAIM COUNT X
## AGAINST COUNTERCLAIM DEFENDANTS PORTER AND EMPIRE
### (Violations of RICO)

438.     Defendants repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

439.     As part of GEICO's routine practice of verifying PC Defendant's valid no-fault claims, Empire transmits or causes to be transmitted via U.S. mail and/or wire no-fault insurance claims, test results, diagnoses, and supporting medical documentation to Porter and requests Porter to conduct peer reviews on said claims, test results, diagnoses and supporting medical documentation.

440.    Empire transmits or causes to be transmitted via U.S. mail and/or wire no-fault insurance said claims, test results, diagnoses, and supporting medical documentation on or about, but not necessarily limited to, the dates listed in Exhibit 4 attached to the Complaint and Exhibit A attached hereto column entitled "Date Verification Received", which are incorporated herein by reference.

441.    Porter conducts peer review upon receipt of said requests, and produces peer review reports that he transmits or causes to be transmitted via U.S. mail and/or wire to GEICO either directly or through Empire.

442.    The transmission of said peer review requests and the peer review reports have occurred on numerous occasions, including, but not necessarily limited to, for each of those claims on or about each date set forth in Exhibit 4 of the Complaint and Exhibit A attached hereto columns entitled "Date Verification Received" and "Date of Peer Review", which are incorporated herein by reference and sufficient to satisfy the element of a pattern as defined under RICO and in violation of 18 U.S.C. § 1962(c) and (d) particularly.

443.    Empire conspires with Porter to produce false peer review reports.

444.    Empire's arrangement and agreement with Porter, explicitly and/or implicitly, mandates peer reviews to establish reasons to deny no-fault insurance claims in general, and particularly those of the PC Defendants, with the knowledge that the fraudulent peer review reports would be used by GEICO to deny no-fault insurance claims, in exchange for continuing business and monetary compensation, to the detriment of PC Defendants and the beneficiaries of No-Fault insurance claims in general and GEICO's policies in particular.

445.    Empire's arrangement and agreement with Porter, explicitly and/or implicitly, mandates peer reviews to establish reasons to deny no-fault insurance claims in general, and

particularly those of the PC Defendants, with the knowledge that the fraudulent peer review reports would be used and relied upon by courts and arbiters to adjudicate no-fault claims in detriment to the PC Defendants.

446.    Said peer reviews are conducted and peer review reports are created pursuant to a pre-determined protocol that is not tailored to the test results, diagnoses, supporting medical documents and reasonable needs of the individual patients for which the claims are submitted.

447.    Said peer reviews are conducted and reports created pursuant to a pre-determined protocol that is not in conformance with accepted practice in the profession.

448.    Said peer reviews are conducted and reports created pursuant to a pre-determined protocol that is intentionally designed to establish reason to deny each no-fault insurance claim in general, and particularly those of the PC Defendants, in whole or in part, for the sole purpose to avoid and/or minimize payments on said claims, maximize income to GEICO and the Counterclaim Defendants, despite the validity of the claims and services rendered thereunder, accepted practices in the profession, and the needs of individual patients for whom the claims are submitted.

449.    GEICO relies upon said false peer review reports to deny claims for no-fault insurance benefits submitted by the PC Defendants and others similarly situated despite the validity of the claims and services rendered thereunder, accepted practices in the profession, and the needs of individual patients for whom the claims are submitted.

450.    Empire and Porter at all relevant times knew and/or should know that GEICO would rely on their false reports to adjudicate no-fault insurance claims of and in detriment to PC Defendants and those similarly situated.

451.    Courts and arbiters rely on Empire and Porter's false reports to adjudicate no-fault insurance claims of and in detriment to PC Defendants and those similarly situated.

452.    Empire and Porter at all relevant times knew and/or should know that courts and arbiters rely on their false reports to adjudicate no-fault insurance claims of and in detriment to PC Defendants and those similarly situated.

453.    By virtue of Empire and Porter's violations of 18 U.S.C. § 1962(c), PC Defendants are entitled to recover from GEICO, Empire and Porter, jointly and severally, treble damages sustained, including interest and attorney's fees allowed under the No-Fault Law, in an amount to be fixed by the Court plus attorneys fees associated with and costs and disbursements of this action.

## COUNTERCLAIM COUNT XI
## AGAINST GEICO, AND COUNTERCLAIM DEFENDANTS ROSENFELD, PORTER, ADVANCED, SCS AND EMPIRE
### (Common Law Fraud)

454.    Defendants repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

455.    GEICO's and the Counterclaim Defendants' conduct, jointly and severally, constitute common law fraud under New York State law.

456.    PC Defendants rely upon GEICO and Counterclaim Defendants' aforementioned conduct to make costly business decisions.

457.    Such costly business decisions include but are not necessarily limited to the costs in processing each claim, processing each routine demand for verification, responding to each routine demand for verification and/or loss of payment on each claim in declining to respond to said demands, loss of income resulting from fraudulent denials premised on false peer review

reports, and to determine if PC Defendants should enter into assignments with victims of no-fault accidents insured by GEICO.

458.     As a result of GEICO's aforementioned conduct, PC Defendants are entitled to actual, consequential and punitive damages from the Plaintiffs in an amount to be set by the Court and of sufficient severity to deter similar conduct by the Plaintiffs in the future which PC Defendants suggest to be triple the amount of each claim, interest and attorney's fees granted by this Court under each Count of these Counterclaims.

## COUNTERCLAIM COUNT XII
## AGAINST GEICO, AND COUNTERCLAIM DEFENDANTS ROSENFELD, PORTER, ADVANCED, SCS AND EMPIRE
### (Unjust Enrichment)

459.     Defendants repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

460.     GEICO and Counterclaim Defendants' conduct, jointly and severally, unjustly enriched each.

461.     GEICO and Counterclaim Defendants' retention of those funds, interest and investment return on said funds violate principles of justice, equity and good conscience.

## COUNTERCLAIM COUNT XIII
## AGAINST GEICO, AND COUNTERCLAIM DEFENDANTS ROSENFELD, PORTER, ADVANCED, SCS AND EMPIRE
### (Declaratory Relief Pursuant To 28 U.S.C. §§ 2201 and 2202)

462.     Defendants repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

463.     A justifiable controversy exists between the Defendants, GEICO and the Counterclaim Defendants as the Defendants challenge

a. GEICO's routine and deliberate failures to conform to and follow the prescriptions of the No-Fault Law by failing to pay, deny and/or seek verification as required under said law;

b. GEICO's routine practice of seeking verification in violation of the No Fault law;

c. GEICO's and Counterclaim Defendants' use and reliance on a pre-determined and fraudulent protocol to conduct peer reviews and use said peer reviews as a basis for denying PC Defendants' claims; and

d. GEICO's denials premised on fraudulent peer reviews.

464.    GEICO's and Counterclaim Defendants referral scheme and use of pre-determined protocol were and are designed to establish reason to deny each no-fault insurance claim in general, and particularly those of the PC Defendants, in whole or in part, for the sole purpose to avoid and/or minimize payments on said claims, maximize income to GEICO and the Counterclaim Defendants, minimize and/or eliminate payments to the PC Defendants, deprive the PC Defendants of income and their patients of necessary psychological services that conform to practice in the profession, despite the validity of the claims and services rendered thereunder and the needs of individual patients for which the claims are submitted.

465.    Accordingly, Defendants request a Judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring GEICO and Counterclaim Defendants, at all relevant times, are and were engaged in a scheme to defeat the purpose and spirit of the No-Fault law and fraudulently deprive the Defendants of income and their patients of necessary psychological services under the No-Fault law.  As such, GEICO had and all relevant times and has no standing to deny, seek verification of, or submit for peer review PC Defendants' claims,

and the Counterclaim Defendants have no standing to review PC Defendants' claims, medical records, services and diagnoses.

Wherefore, Defendants Jonathan Kogen, Ph.D., LMK Psychological Services, P.C., Valley Psychological, P.C. and Andrew Blumenthal respectfully request an order of this Court dismissing each and every Count set forth in the Complaint and the Complaint in its entirety, and awarding to the Defendants together with costs, disbursements, statutory interest and attorney fees to Defendants and such other and further relief as this Court deems fair, just and equitable:

### ON COUNTERCLAIM COUNT I AGAINST GEICO
### (Violations of the New York State No-Fault Law)

466.    On Counterclaim Count I against GEICO:  in an approximate amount of One Million Seventy Six Thousand Five Hundred Seventy Five Dollars ($1,076,575.00) plus interest and attorneys' fees as provided by the No-Fault Law, to be accurately fixed by the Court, plus costs and disbursements of this action;

### ON COUNTERCLAIM COUNT II AGAINST GEICO
### (Violations of New York State No-Fault Law)

467.    On Counterclaim Count II against GEICO:  in an approximate amount of One Million Seventy Six Thousand Five Hundred Seventy Five Dollars ($1,076,575.00) plus interest and attorneys' fees as provided by the No-Fault Law, to be accurately fixed by the Court, plus costs and disbursements of this action;

### ON COUNTERCLAIM COUNT III AGAINST GEICO
### (Violation of NY Ins. Law § 5106 and the tort of bad faith)

468.    On Counterclaim Count III against GEICO: actual, consequential and punitive damages from GEICO in an amount to be set by the Court and of sufficient severity to deter similar conduct by the Plaintiffs in the future which PC Defendants suggest triple the amount of

each claim, interest and attorney's fees granted by this Court under each Count of these

Counterclaims;

## COUNTERCLAIM COUNT IV AGAINST GEICO
### (Interference With Business, Medical And Contractual Relations)

469.    On Counterclaim Count IV against GEICO: actual, consequential and punitive

damages from GEICO in an amount to be set by the Court and of sufficient severity to deter

similar conduct by the Plaintiffs in the future which PC Defendants suggest triple the amount of

each claim, interest and attorney's fees granted by this Court under each Count of these

Counterclaims;

## COUNTERCLAIM COUNT V AGAINST GEICO
### (Violation of NY Ins. Law § 5106 and the torts of bad faith)

470.    On Counterclaim Count V against GEICO: actual, consequential and punitive

damages from GEICO in an amount to be set by the Court and of sufficient severity to deter

similar conduct by the Plaintiffs in the future which PC Defendants suggest triple the amount of

each claim, interest and attorney's fees granted by this Court under each Count of these

Counterclaims;

## COUNTERCLAIM COUNT VI AGAINST GEICO
### (Interference with Business, Medical and Contractual Relations)

471.    On Counterclaim Count VI against GEICO: actual, consequential and punitive

damages from GEICO in an amount to be set by the Court and of sufficient severity to deter

similar conduct by the Plaintiffs in the future which PC Defendants suggest triple the amount of

each claim, interest and attorney's fees granted by this Court under each Count of these

Counterclaims;

## ON COUNTERCLAIM COUNT VII AGAINST GEICO
### (Violations of the Racketeer Influenced and Corrupt Organization Act, 18 U.S.C. § 1961 *et seq.*; hereinafter known as "RICO")

472.     On Counterclaim Count VII against GEICO jointly and severally: treble damages sustained, including interest and attorney's fees allowed under the No-Fault Law, in an amount to be fixed by the Court plus attorneys fees associated with and costs and disbursements of this action;

**ON COUNTERCLAIM COUNT VIII AGAINST GEICO, AND COUNTERCLAIM
DEFENDANTS ROSENFELD, PORTER, ADVANCED, SCS AND EMPIRE
(Violations of RICO)**

473.     On Counterclaim Count VIII against GEICO and the Counterclaim Defendants jointly and severally: treble damages sustained, including interest and attorney's fees allowed under the No-Fault Law, in an amount to be fixed by the Court plus attorneys fees associated with and costs and disbursements of this action;

**COUNTERCLAIM COUNT IX
AGAINST COUNTERCLAIM DEFENDANTS ROSENFELD, ADVANCED AND SCS
(Violations of RICO)**

474.     On Counterclaim Count IX against Rosenfeld, Advanced and SCS jointly and severally:  treble damages sustained, including interest and attorney's fees allowed under the No-Fault Law, in an amount to be fixed by the Court plus attorneys fees associated with and costs and disbursements of this action;

**COUNTERCLAIM COUNT X
AGAINST COUNTERCLAIM DEFENDANTS PORTER AND EMPIRE
(Violations of RICO)**

475.     On Counterclaim Count X against Porter and Empire, jointly and severally:  treble damages sustained, including interest and attorney's fees allowed under the No-Fault Law, in an amount to be fixed by the Court plus attorneys fees associated with and costs and disbursements of this action;

**ON COUNTERCLAIM COUNT XI AGAINST GEICO, AND COUNTERCLAIM
DEFENDANTS ROSENFELD, PORTER, ADVANCED, SCS AND EMPIRE
(Common Law Fraud)**

476.     On Counterclaim Count XI against GEICO and the Counterclaim Defendants jointly and severally: monies withheld by GEICO for claims submitted by PC Defendants, plus interest and attorney's fees as allowed under the No-Fault Law, and costs, disbursements and reasonable attorney's fees incurred in connection with this action;

**ON COUNTERCLAIM COUNT XII AGAINST GEICO, AND COUNTERCLAIM
DEFENDANTS ROSENFELD, PORTER, ADVANCED, SCS AND EMPIRE
(Unjust Enrichment)**

477.     On Counterclaim Count XII against GEICO and the Counterclaim Defendants jointly and severally: for monies unjustly retained, interest and investment return on said monies, actual, consequential and punitive damages in an amount to be set by the Court plus costs and disbursements of this action;

**ON COUNTERCLAIM COUNT XIII AGAINST GEICO, AND COUNTERCLAIM
DEFENDANTS ROSENFELD, PORTER, ADVANCED, SCS AND EMPIRE
(Declaratory Relief Pursuant To 28 U.S.C. §§ 2201 and 2202)**

478.     On Counterclaim Count XIII against GEICO and the Counterclaim Defendants: a Judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring GEICO and Counterclaim Defendants, at all relevant times, were and continue to be engaged in a scheme to defeat the purpose and spirit of the No-Fault law and fraudulently deprive the PC Defendants of income and their patients of necessary psychological services under the No-Fault law.  As such, GEICO has no standing to deny or submit for peer review PC Defendants claims, and the Counterclaim Defendants have no standing to review PC Defendants' claims, medical records, services and diagnoses.

## JURY TRIAL DEMAND

479.    Defendants hereby demand a trial by jury on all claims.

Dated:  June 19, 2012

Law Office of Craig Meyerson

_____
by: Craig Meyerson (CM7768)
*Attorney for the Defendants*
17 British American Boulevard
Latham, New York  12110
Tel:  518-785-7440

# EXHIBIT A

# EXHIBIT A

# EXHIBIT A

COUNTERCLAIMS EXHIBIT A

Note 1:  All dates are from documents provided by Plaintiffs and are not confirmed or admitted
by Defendants.  Defendants reserve the right to challenge the dates set forth herein.
Note 2:   The exact date of the peer review report is not known but upon
information and belief would have to be between the date verification was received
and the date of denial.
Note 3: Patients are idenitfied by initials and claim numbers to protect confidentiality

| Patient | Claim Number | Date of Verification Request | Date Verification Received | Date of Peer Review | Name of Peer Reviewer | Date of Denial |
|---------|--------------|------------------------------|----------------------------|---------------------|------------------------|----------------|
| CA | 352918400101017 | 11/17/08 | 11/20/08 | 11/24/08 | Rosenfeld | 12/1/08 |
| MB | 331372560101019 | 1/8/09 | 2/23/09 | 2/28/09 | Rosenfeld | 3/3/09 |
| DD | 319962240101011 | 9/12/08 | 9/27/08 | 10/1/08 | Rosenfeld | 10/9/08 |
| AG | 341232020101017 | 9/5/08 | 9/24/08 | 10/13/08 | Rosenfeld | 10/16/08 |
| GE | 292980230101024 | 5/19/08 | 6/9/08 | 6/19/08 | Rosenfeld | 6/23/08 |
| HR | 301154360101035 | 12/19/08 | 3/13/09 | 3/19/09 | Rosenfeld | 3/25/09 |
| JH | 248046380101027 | 11/13/08 | 12/8/08 | 12/11/08 | Rosenfeld | 12/14/08 |
| JM | 159917030101046 | 11/3/08 | 11/20/08 | 11/25/08 | Rosenfeld | 12/2/08 |
| DN | 210803070101038 | 7/10/08 | 7/22/08 | 7/24/08 | Porter | 7/30/08 |
| PD | 339491540101014 | 8/29/08 | 10/29/08 | 11/1/08 | Rosenfeld | 11/6/08 |
| KP | 291317970101024 | 1/7/08 | 3/14/08 | 3/19/08 | Rosenfeld | 3/20/08 |
| SP | 349442000101018 | 10/31/08 | 2/26/09 | 3/5/09 | Rosenfeld | 3/10/09 |
| HR | 325749120101019 | 10/3/08 | 2/3/09 | 2/17/09 | Rosenfeld | 2/19/09 |
| LR | 314108770101014 | 1/10/08 | 2/5/08 | 2/13/08 | Rosenfeld | 2/15/08 |
| LS | 310417730101012 | 1/11/08 | 2/1/08 | 2/8/08 | Rosenfeld | 2/11/08 |
| LS | 297159770101018 | 11/7/07 | 11/13/07 | 11/15/07 | Rosenfeld | 11/23/07 |
| FU | 153176790101037 | 1/28/08 | 2/14/08 | 2/20/08 | Rosenfeld | 2/21/08 |
| HV | 72207670101066 | 1/14/08 | 8/13/08 | 9/1/08 | Rosenfeld | 9/5/08 |
| KE | 345851530101021 | 5/17/10 | 9/27/10 | 9/30/10 | Rosenfeld | 10/1/10 |
| LG | 317701180101041 | 5/20/10 | 8/4/10 | See Note 2 | Rosenfeld | 8/31/10 |
| VE | 69482400101059 | 5/5/09 | 7/9/10 | 7/6/10 | Rosenfeld | 7/9/10 |
| CG | 341745360101016 | 6/18/09 | 7/1/10 | See Note 2 | Rosenfeld | 7/8/10 |
| MD | 117424150101170 | 8/14/09 | 2/9/10 | 2/16/10 | Rosenfeld | 2/24/10 |
| ET | 297984060101034 | 6/15/09 | 3/18/10 | 3/29/10 | Rosenfeld | 4/9/10 |
| DB | 253468590101047 | 9/25/08 | 2/15/10 | See Note 2 | Rosenfeld | 3/4/10 |
| TA | 299807290101029 | 10/6/08 | 11/18/10 | See Note 2 | Porter | 12/10/10 |
| JG | 264320550101029 | 12/29/09 | 11/17/10 | See Note 2 | Porter | 12/7/10 |
| MD | 267316550101024 | 6/27/08 | 11/19/10 | 11/23/10 | Rosenfeld | 11/29/10 |
| SG | 277640260101018 | 10/5/09 | 11/19/10 | See Note 2 | Porter | 12/8/10 |
| BY | 288637350101053 | 12/28/09 | 12/15/10 | See Note 2 | Porter | 12/30/10 |
| AG | 372702890101018 | 10/5/09 | 8/24/10 | See Note 2 | Porter | 11/10/10 |
| KW | 170708270101050 | 4/13/09 | 10/20/10 | See Note 2 | Rosenfeld | 11/10/10 |
| LT | 308423260101012 | 11/20/09 | 10/19/10 | See Note 2 | Rosenfeld | 11/1/10 |
| DS | 192245910101079 | 9/28/10 | 11/4/10 | See Note 2 | Porter | 11/12/10 |
| NL | 233733720101042 | 4/23/10 | 1/14/11 | 1/19/11 | Rosenfeld | 2/1/11 |
| RL | 370391230101011 | 2/8/10 | 12/17/10 | See Note 2 | Porter | 1/13/11 |
| AG | 355639230101012 | 4/23/10 | 12/15/10 | 12/20/10 | Rosenfeld | 12/29/10 |
| JM | 279602790101023 | 12/11/09 | 11/19/10 | 12/8/10 | Rosenfeld | 12/9/10 |
| DB | 326031430101040 | 11/16/09 | 11/29/10 | 12/1/10 | Rosenfeld | 12/6/10 |
| CH | 328044300101048 | 6/18/09 | 11/19/10 | 11/29/10 | Rosenfeld | 11/23/10 |
| WA | 364334690101012 | 5/18/09 | 12/16/10 | 12/17/10 | Rosenfeld | 12/22/10 |

| | | | | | | |
|---|---|---|---|---|---|---|
| TH | 336464090101026 | 8/8/08 | 12/15/10 | See Note 2 | Porter | 12/23/10 |
| MR | 280065080101029 | 1/18/10 | 12/15/10 | See Note 2 | Porter | 12/23/10 |
| DA | 336778410101010 | 1/17/08 | 2/15/08 | See Note 2 | Porter | 3/3/08 |
| SA | 249994380101084 | 7/18/08 | 8/4/08 | See Note 2 | Rosenfeld | 8/12/08 |
| MA | 309121130101019 | 5/14/07 | 5/24/07 | See Note 2 | Rosenfeld | 6/20/07 |
| JB | 331355860101011 | 2/8/08 | 3/1/08 | See Note 2 | Porter | 3/18/08 |
| PB | 99802000101056 | 7/21/08 | 10/6/08 | See Note 2 | Rosenfeld | 10/16/08 |
| MB | 275084220101010 | 7/25/08 | 8/5/08 | See Note 2 | Rosenfeld | 8/11/08 |
| AB | 239745420101035 | 12/19/08 | 1/20/09 | See Note 2 | Rosenfeld | 1/28/09 |
| CB | 155966670101028 | 11/28/07 | 3/27/08 | See Note 2 | Rosenfeld | 4/7/08 |
| PC | 338057650101010 | 9/2/08 | 1/20/09 | See Note 2 | Rosenfeld | 2/12/09 |
| MC | 327815570101029 | 3/5/09 | 3/24/09 | See Note 2 | Rosenfeld | 3/24/09 |
| RC | 330340750101017 | 12/10/07 | 2/8/08 | See Note 2 | Rosenfeld | 2/21/08 |
| MC | 349826760101012 | 12/8/08 | 1/20/09 | See Note 2 | Porter | 2/5/09 |
| MC | 295419550101030 | 7/21/08 | 9/24/08 | See Note 2 | Porter | 10/14/08 |
| CC | 320823690101017 | 2/17/09 | 3/9/09 | See Note 2 | Rosenfeld | 3/16/09 |
| DD | 318153280101019 | 1/31/08 | 3/1/08 | See Note 2 | Porter | 3/17/08 |
| DD | 141297180101018 | 2/23/09 | 3/5/09 | See Note 2 | Rosenfeld | 3/12/09 |
| BA | 374925460101017 | 11/20/09 | 1/21/10 | 2/5/10 | Rosenfeld | 2/10/10 |
| AR | 323977200101029 | 2/9/09 | 4/3/09 | 4/6/09 | Rosenfeld | 4/13/09 |
| VB | 279627240101034 | 3/20/09 | 2/15/10 | 2/24/10 | Rosenfeld | 2/25/10 |
| WB | 326972770101027 | 12/10/09 | 3/2/10 | 3/4/10 | Rosenfeld | 3/5/10 |
| EB | 328588170101017 | 9/20/07 | 10/19/07 | See Note 2 | Rosenfeld | 11/9/07 |
| BC | 289231330101018 | 9/4/07 | 9/24/07 | See Note 2 | Rosenfeld | 10/19/07 |
| VC | 93019410101065 | 7/13/09 | 11/6/09 | See Note 2 | Porter | 11/13/09 |
| DC | 298004870101022 | 3/23/09 | 9/2/09 | See Note 2 | Rosenfeld | 9/17/09 |
| CD | 352548580101014 | 12/17/08 | 7/10/09 | See Note 2 | Rosenfeld | 8/3/09 |
| CE | 332593580101015 | 1/7/08 | 1/18/08 | See Note 2 | Rosenfeld | 1/23/08 |
| EK | 290623040101014 | 11/3/08 | 9/11/09 | 9/15/09 | Rosenfeld | 9/16/09 |
| FL | 322641810101016 | 7/30/09 | 9/8/09 | 9/20/09 | Rosenfeld | 9/22/09 |
| IF | 318040370101019 | 2/6/09 | 9/8/09 | 9/16/09 | Rosenfeld | 9/22/09 |
| GG | 312097580101037 | 5/9/08 | 9/9/09 | 9/28/09 | Rosenfeld | 9/30/09 |
| PG | 349442000101018 | 10/3/08 | 3/5/09 | See Note 2 | Rosenfeld | 3/18/09 |
| WG | 141896180101074 | 5/27/08 | 6/24/08 | See Note 2 | Rosenfeld | 7/1/08 |
| LH | 322641810101016 | 7/27/09 | 11/11/09 | 11/17/09 | Porter | 11/20/09 |
| KH | 347842240101029 | 11/20/09 | 2/13/10 | 2/18/10 | Porter | 2/22/10 |
| LH | 183838290101056 | 12/11/09 | 3/8/10 | See Note 2 | Rosenfeld | 3/31/10 |
| JJ | 326627490101018 | 5/19/08 | 10/22/09 | 10/26/09 | Porter | 11/2/09 |
| YJ | 314897220101026 | 4/13/09 | 5/22/09 | 6/9/09 | Porter | 6/11/09 |
| JN | 226698600101017 | 5/21/07 | 8/13/07 | See Note 2 | Porter | 9/6/07 |
| LK | 293881070101018 | 3/10/08 | 10/22/09 | See Note 2 | Rosenfeld | 11/16/09 |
| ML | 325118430101012 | 10/30/08 | 10/30/08 | See Note 2 | Rosenfeld | 11/7/08 |
| EL | 315060900101019 | 7/11/08 | 8/6/08 | See Note 2 | Rosenfeld | 8/13/08 |
| EM | 136434530101029 | 12/7/07 | 12/19/07 | See Note 2 | Porter | 1/4/08 |
| WM | 345328950101013 | 7/28/08 | 8/15/08 | See Note 2 | Rosenfeld | 8/28/08 |
| JM | 336528290101018 | 11/16/09 | 3/8/10 | See Note 2 | Porter | 3/16/10 |
| MK | 170933000101028 | 11/17/09 | 3/9/10 | See Note 2 | Rosenfeld | 4/1/10 |
| MJ | 353847770101019 | 6/12/09 | 7/10/09 | 7/22/09 | Rosenfeld | 7/31/09 |
| CM | 163698000101133 | 10/6/07 | 10/16/07 | See Note 2 | Rosenfeld | 10/24/07 |
| PM | 268122460101032 | 2/20/09 | 4/6/09 | 4/9/09 | Rosenfeld | 4/15/09 |
| KM | 287991860101025 | 11/3/06 | 10/23/09 | See Note 2 | Porter | 11/12/09 |
| AM | 292788120101032 | 12/11/09 | 3/8/10 | See Note 2 | Rosenfeld | 3/26/10 |

| | | | | | | |
|---|---|---|---|---|---|---|
| MG | 276545600101019 | 8/4/08 | 11/18/09 | See Note 2 | Rosenfeld | 12/3/09 |
| KN | 303824590101017 | 5/8/09 | 11/18/09 | 12/3/09 | Rosenfeld | 12/7/09 |
| AO | 324425060101019 | 12/5/08 | 11/19/09 | 11/24/09 | Rosenfeld | 11/27/09 |
| SN | 210803070101038 | 5/27/08 | 7/22/08 | See Note 2 | Porter | 7/30/08 |
| OE | 365202320101018 | 6/18/09 | 10/9/09 | See Note 2 | Rosenfeld | 10/23/09 |
| FP | 331618530101020 | 7/20/09 | 12/11/09 | 12/15/09 | Rosenfeld | 12/17/09 |
| TP | 343031110101038 | 8/17/09 | 11/18/09 | 11/23/09 | Porter | 11/25/09 |
| CP | 172197250101041 | 8/24/09 | 12/30/09 | See Note 2 | Porter | 1/20/10 |
| AP | 276865550101037 | 11/17/08 | 1/4/10 | 1/11/10 | Rosenfeld | 1/13/10 |
| VR | 309075420101032 | 5/5/09 | 5/7/09 | 5/26/09 | Porter | 6/1/09 |
| PR | 105246080101101 | 6/8/09 | 7/10/09 | See Note 2 | Rosenfeld | 7/20/09 |
| WR | 309075420101032 | 5/5/09 | 5/7/09 | See Note 2 | Porter | 6/1/09 |
| VR | 336464090101026 | 8/28/08 | 10/16/08 | 10/21/08 | Rosenfeld | 10/27/08 |
| GR | 275196070101013 | 3/1/10 | 3/9/10 | See Note 2 | Rosenfeld | 3/25/10 |
| SD | 341232020101017 | 9/25/08 | 2/15/10 | See Note 2 | Rosenfeld | 2/26/10 |
| MR | 297705230101020 | 12/19/08 | 9/29/09 | See Note 2 | Rosenfeld | 10/22/09 |
| LR | 313382610101036 | 12/16/08 | 3/26/09 | 3/30/09 | Porter | 4/6/09 |
| WR | 355465230101012 | 11/20/09 | 1/21/10 | See Note 2 | Rosenfeld | 2/12/10 |
| DR | 318248840101010 | 12/14/09 | 3/2/10 | 3/18/10 | Rosenfeld | 3/19/10 |
| JA | 310356460101034 | 5/26/09 | 6/5/09 | 6/11/09 | Rosenfeld | 6/17/09 |
| AG | 279627240101034 | 3/20/09 | 4/16/09 | 4/21/09 | Rosenfeld | 4/27/09 |
| IA | 131225170101070 | 5/5/09 | 5/18/09 | See Note 2 | Rosenfeld | 5/27/09 |
| KA | 294843070101074 | 2/25/08 | 10/1/09 | See Note 2 | Porter | 10/13/09 |
| BB | 207305780101022 | 4/13/09 | 5/14/09 | See Note 2 | Porter | 5/21/09 |
| CB | 135291160101013 | 4/13/09 | 5/14/09 | See Note 2 | Rosenfeld | 5/20/09 |
| CB | 135291160101013 | 4/13/09 | 5/14/09 | See Note 2 | Rosenfeld | 5/20/09 |
| DB | 310356460101034 | 5/5/09 | 6/4/09 | 6/12/09 | Rosenfeld | 6/17/09 |
| MB | 298399480101044 | 5/11/09 | 6/18/09 | See Note 2 | Porter | 6/26/09 |
| AC | 154829270101021 | 2/20/09 | 6/16/09 | See Note 2 | Rosenfeld | 6/22/09 |
| SC | 358259510101017 | 3/19/09 | 4/1/09 | 4/5/09 | Rosenfeld | 4/9/09 |
| TC | 284336660101044 | 8/17/09 | 11/6/09 | See Note 2 | Rosenfeld | 11/12/09 |
| AC | 178285930101062 | 12/8/08 | 1/9/09 | See Note 2 | Porter | 1/14/09 |
| AC | 93131260101218 | 7/16/09 | 11/6/09 | See Note 2 | Rosenfeld | 11/24/09 |
| RC | 325460100101033 | 11/3/08 | 3/20/09 | See Note 2 | Rosenfeld | 3/26/09 |
| LD | 217387050101039 | 9/18/09 | 10/7/09 | See Note 2 | Porter | 10/19/09 |
| RD | 373928570101015 | 11/23/09 | 7/1/10 | 7/7/10 | Porter | 7/13/10 |
| JD | 288313710101080 | 4/23/09 | 5/14/09 | 5/20/09 | Rosenfeld | 5/21/09 |
| EF | 83435110101209 | 3/9/09 | 6/17/10 | 7/12/10 | Rosenfeld | 7/14/10 |
| JG | 235234280101017 | 5/28/09 | 6/4/09 | See Note 2 | Rosenfeld | 6/22/09 |