```
             UNITED STATES DISTRICT COURT
             EASTERN DISTRICT OF NEW YORK
```

-----------------------------X **Docket#**
GOVERNMENT EMPLOYEES            : 12-cv-1068(FB)(VMS)
INSURANCE COMPANY, et al.,      :
            Plaintiff,          :
                                :
    - versus -                  : U.S. Courthouse
                                : Brooklyn, New York
KOGEN, et. al,                  :
            Defendant           : July 18, 2013
-----------------------------X

```
        TRANSCRIPT OF CIVIL CAUSE FOR MOTION HEARING
           BEFORE THE HONORABLE VERA M. SCANLON
              UNITED STATES MAGISTRATE JUDGE
```

**A   P   P   E   A   R   A   N   C   E   S:**


**For the Plaintiff**:        **Richard D. King, Esq.**
                              **Nathan Tilden, Esq.**
                              **Jacqueline McEttrick, Esq.**
                              Smith & Brink, P.C.
                              1325 Franklin Avenue
                              Garden City, NY 11530


**For the Defendant**:        **Craig Meyerson, Esq.**
                              Law Office of Craig Meyerson
                              17 British America Blvd.
                              Latham, NY 12110


**For Counter Defendant**:    **Steven Joseph Auletta, Esq.**
                              Kaufman Borgeest & Ryan LLP
                              200 Summit Lake Drive
                              Valhalla, NY 10595


**For Counter Defendant**:    **Tania Mistretta, Esq.**
                              Winget, Spadafora &
                              Schwartberg, LLP
                              45 Broadway
                              New York, NY 10006


**Transcription Service**:    **Transcriptions Plus II, Inc.**
                              740 Sharon Road
                              Copiague, New York 11726
                              Transcriptions2@verizon.net


Proceedings recorded by electronic sound-recording,
transcript produced by transcription service

```
                       Proceedings                    2
```

1          THE COURT:  GEICO v. Kogen, docket number 12-

2    cv-1068.  So, for GEICO, who do we have?

3          MR. KING:  It's Richard King.  Also with me is

4    my partner, Nathan Tilden and our associate, Jacquelyn

5    McEttrick.

6          THE COURT:  Okay.  And then for the defendant?

7          MR. MEYERSON:  Craig Meyerson for Dr. Kogen,

8    Andrew Blumenthal, LMK and Valley.

9          THE COURT:  Okay.  Do we have anyone else on?

10         MS. MISTRETTA:  Yes, Tania Mistretta for the

11   counterclaim defendant Empire Stat Group and Empire Med

12   Review, P.C.

13         MR. AULETTA:  And this is Steve Auletta from

14   Kaufman Borgeest & Ryan for counterclaim defendant

15   Franklin Porter.

16         THE COURT:  Okay.  Anybody else?  No.  Okay.

17         All right.  So, we had our effort to settle

18   which didn't succeed at the last conference.  So, we're

19   here to figure out where we're picking up with discovery

20   because discovery was stayed while that was happening.

21   So, have you all had a chance to discuss what you

22   propose?  Do you have a proposal for where this should go

23   in terms of discovery?

24         MR. KING:  Your Honor, this is Richard King for

25   GEICO.

Proceedings                                    3

1          Yeah, we've had a couple of discussions since

2    we were last, you know, with your Honor and I think that

3    we're in agreement in terms of to the extent that there's

4    some -- a balance of certain paper discovery that remains

5    outstanding from each side -- when I mean each side, I

6    mean the defendants and GEICO, the parties will effort to

7    clean that up.

8          With respect to -- and there's some things we

9    should probably talk about specifically but with respect

10   to depositions which as you know have not -- hello?

11         THE COURT:  I'm still here.

12         UNIDENTIFIED SPEAKER:  I'm still here.

13         MR. KING:  Okay.  With -- the oral depositions

14   have not commenced and we would act -- we continue to

15   hold those in abeyance until there's a decision regarding

16   what the total legal landscape of the case will be

17   pending the decision on the motions to amend and then

18   there's also --

19         THE COURT:  The sanctions.

20         MR. KING:  There's really no operative

21   complaint at this -- or counterclaim and answer at this

22   time.  So, we had filed motions to dismiss, at least one

23   or probably a supplemental, as well -- a motion to

24   dismiss and those would need to be addressed, I think as

25   well.

```
                         Proceedings                    4
```

1      One of the things that Craig and I discussed in
2  the last couple of days anyway was the fact that -- in
3  light of the costs that both parties have incurred,
4  especially GEICO in producing documents and whatnot, we
5  had asked the Court -- that we would be able to stay
6  anything beyond what -- the discovery that's already been
7  tendered to each side and whatever deficiencies there are
8  regarding that discovery until a decision on the motion
9  to dismiss, so that we -- we know what third-parties, if
10 any, are in the case and what claims are at issue because
11 the discovery will be certainly -- much of it I think
12 will be obviated if the Court rules to dismiss or to deny
13 that certain of the claims or deny the motion to amend.
14 So, that I think we're in agreement on that.
15      (Mr. Meyerson breaking up.)
16      MR. MEYERSON:  And, Judge, I have
17 (indiscernible) -- I'm sorry I didn't (indiscernible)
18 that Rick had said.
19      THE COURT:  All right.  So who is speaking?
20      MR. MEYERSON:  I am in agreement that --
21      THE COURT:  Is this Mr. Meyerson?
22      MR. MEYERSON:  Yes.
23      THE COURT:  Okay.
24      MR. MEYERSON:  Craig Meyerson; sorry.
25      THE COURT:  Let me -- hang on.  Just before you

```
                        Proceedings                    5
 1   say it, let me just make sure I have all the motions that

 2   are pending.  There's the 63 -- I'm just using the docket

 3   numbers which is the one from October last year and then

 4   there's the 80 which is -- I guess is another version --

 5   which is the February --

 6              MR. MEYERSON:  That's correct.

 7              THE COURT:  -- letter motion.  And then there I

 8   think two sanctions motions.  Is that right?

 9              MR. KING:  This is, your Honor, Rick King for

10   GEICO.

11              With respect to the two Rule 11 sanctions

12   motions that's docket 99 --

13              THE COURT:  And 107.

14              MR. KING:  -- and 107.  Craig and I agreed that

15   we would withdraw those but, your Honor is correct, 63

16   and 80 are still at issue.  Also, there's a docket 96 and

17   97 are still at issue or 95, 96, and 97.

18              THE COURT:  All right.  Hold on one second.

19   Hold on.

20              MR. KING:  So if we would --

21              THE COURT:  Hang on one second.  95 -- say that

22   again.  Which ones do you think?  95?

23              MR. KING:  95, 96 and 97.

24              THE COURT:  Okay.  Which two are you -- which

25   ones are you willing to -- you're agreeing to withdraw?
```

```
                        Proceedings                    6
```

1           MR. KING:  99 and 107.

2           THE COURT:  Okay.  All right.  So, the others

3    are -- I guess they're not showing up as motions here,

4    but they're motions.

5           MR. MEYERSON:  Well, 95 and 96 are letters to

6    your Honor regarding disclosure deficiencies that

7    defendant alleges plaintiff and plaintiff alleges against

8    defendant.  And 90- which one am I looking at -- 97 is

9    defendant's request to (indiscernible).

10          UNIDENTIFIED SPEAKER:  I'm having difficulty

11   hearing whoever is speaking right now.

12          THE COURT:  Yes, Mr. Meyerson, can you -- I

13   don't know where you are.

14          MR. MEYERSON:  This is (indiscernible) hear me

15   better now or --

16          THE COURT:  No, you're -- it's breaking up.

17   Are you on a cell phone or --

18          MR. MEYERSON:  Yes, I am.  I'm traveling.

19          THE COURT:  All right.  I don't know where

20   you're standing.  If you try to stay still so we can hear

21   you.

22          MR. MEYERSON:  I'll try.

23          THE COURT:  Okay.

24          UNIDENTIFIED SPEAKER:  I can hear now.

25          THE COURT:  Okay.

```
                      Proceedings                      7
 1           MR. MEYERSON:  Are you okay here?
 2           UNIDENTIFIED SPEAKER:  Yup.
 3           MR. MEYERSON:  Okay.  Say 95 is --
 4           THE COURT:  And now it's -- now it's worse.  Go
 5  ahead.  Try it again.
 6           MR. MEYERSON:  Okay.  Let me just
 7  (indiscernible).
 8           THE COURT:  I think we need like what is it,
 9  the Verizon test; can you hear me now?  Can you hear me
10  now?  Because I'm not sure --
11           MR. MEYERSON:  Yeah.  Is that any better?
12           THE COURT:  For now it is.
13           MR. KING:  I can hear you now.
14           MR. MEYERSON:  Yes, okay.  95 and 96 are
15  discovery issues between plaintiffs and defendants.  97
16  is defendant's request for leave to file a 12(c) motion
17  to dismiss on the pleadings.  So -- and 96, also there's
18  docket number 106 there's a complete copy of docket 96,
19  for some reason the full --
20           THE COURT:  I'm sorry.
21           MR. MEYERSON:  -- filing wasn't made.
22           THE COURT:  I'm sorry.  You're -- on this end
23  it broke up again.  Which ones are which?  You said 96?
24           MR. MEYERSON:  Yeah, 95 and 96 are discovery
25  issues.
```

```
                      Proceedings                    8
```

1         THE COURT:  Right.  Yes.

2         MR. MEYERSON:  And 106 is related to 96.

3         THE COURT:  Okay.

4         MR. MEYERSON:  And 97 is a request for leave to

5    file a 12(c) motion by the defendant.

6         MR. KING:  Your Honor, if I may, it's Rick King

7    for GEICO again.  With respect to that last one

8    mentioned, 97, the 12(c) motion, I think the Court has

9    already ruled from the bench and has certainly indicated

10   more than -- on more than one occasion that any Rule 12

11   motion to dismiss would be -- would not be allowed at

12   this juncture.

13        THE COURT:  Yes, we don't --

14        MR. MEYERSON:  Well, in regard -- this says

15   request has been made after discovery has proceeded.

16   Those other motions -- those other indications were made

17   before discovery and through discovery, we have found

18   documents that were integral to the complaint which

19   supports dismissing many of the causes -- claims put

20   forth by the plaintiff and if it -- this motion is heard

21   and granted, it would obviate a lot of discovery and

22   shorten this case considerably.

23        THE COURT:  So, let me just -- I didn't look at

24   it before I came on the bench today.  Is that a partial

25   or a complete motion?

```
                    Proceedings                    9
1          MR. MEYERSON:  That would be -- well it's a
2    request for leave to file the motion.
3          THE COURT:  I know but is your thought that the
4    motion would make the whole case go away and I guess the
5    question is -- follow on is what about your
6    counterclaims?  Are these related at all or no, just --
7    Okay.
8          MR. MEYERSON:  Well, the motion if it was
9    granted in full would make the case go away -- would make
10   the plaintiff's case go away.  The defendant claims still
11   remain that GEICO owes -- the defendant's a substantial
12   sum of money.
13         THE COURT:  All right.
14         MR. MEYERSON:  But if plaintiff's claim
15   disappear, I would think GEICO would pay those claims.
16         THE COURT:
17         MR. KING:  Your Honor, Rick King for GEICO
18   again.  I guess not to belabor this, I know that this
19   call isn't about this 12(c) motion but I don't -- I guess
20   what one of the things that I am having trouble with is
21   if it's a 12(c) motion, it's the motion on the pleadings
22   but the defendants are talking about documents that they
23   have discovered through or have been revealed through
24   discovery.  So, it seems like it would ask the Court to
25   look beyond the pleadings.  So, I don't it properly
```

```
                     Proceedings                    10
```

1    addresses the 12(c) motion.

2         MR. MEYERSON:  Again, we believe these

3    documents are integral to the pleadings and as such, they

4    would be included as a 12(c) motion and under the Federal

5    Rules, a party is allowed to make that motion at any

6    time.  So, it says here, I guess it depends on how the

7    Court reviews those documents, if the Court agrees

8    they're integral to the pleadings, then it would be

9    considered as 12(c) motion.

10         THE COURT:  Okay.  All right.  So, what is it

11   that you think --

12         MR. MEYERSON:  So --

13         THE COURT:  Before hearing from me on anything,

14   is there any discovery that you are in agreement that you

15   should be finishing up?  Just let's break this into

16   steps.  Is there anything outstanding that you agree on

17   needs to be produced or even the -- is the document

18   discovery tied up in these motions?

19         MR. MEYERSON:  Well, Rick and I discussed some

20   of the things that defendant believes the plaintiff

21   should disclose.  He indicated that some of it he would

22   disclose but some of it he won't without a court order.

23   So, maybe perhaps it should be tied together with the

24   statistical information we're seeking from the plaintiffs

25   and information regarding settlements that have been

```
                         Proceedings                    11
```

1   previously rendered on these claims that the plaintiffs

2   are alleging they should recoup money on.

3             THE COURT:  Those are the ones that GEICO is

4   not going to produce without the order; is that what

5   you're saying?

6             MR. MEYERSON:  Correct

7             THE COURT:  All right.  What about what GEICO

8   will produce that's not --

9             MR. MEYERSON:  We have requested information

10  dating back to 1998 which goes to our defenses, as well

11  as our counterclaims and Rick indicated that -- and

12  correct me if I am wrong, Rick, but you indicated that

13  you would produce that information.

14            MR. KING:  Yeah, I -- your Honor, this is Rick

15  again.

16            I could probably go through this a little bit

17  from my understanding in terms of what's out there, vis-

18  a-vis the exchange of pleading responses to paper

19  discovery and documents produced thus far.

20            As far as GEICO, the only group of documents or

21  information that hadn't been completely turned over to

22  the defendants, as far as I can tell is what I call

23  litigation materials that Craig had asked for or

24  defendants had asked for a bunch of different things and

25  your Honor said well, let's break down into different

Proceedings                          12

1    categories and, you know, that's what we did and then on

2    a rolling basis we produced like all of the claim files,

3    all of the so-called investigatory materials, the SIU

4    materials, et cetera.  And then the litigation materials

5    would be those materials that let's say GEICO was sued by

6    the defendant for no-fault -- non-payment of a no-fault

7    claim and then it went into suit.  GEICO either, you

8    know, retained counsel or house counsel or whoever

9    defended that suit, there would be litigation materials.

10   Now, a couple of comments about those.

11            THE COURT:  Um-hum.

12            MR. KING:  All sides have essentially asked for

13   those from each other and GEICO is not itself possessed

14   of many of those sort of extra claim documents that are

15   purely litigation based.  They're in the hands of, you

16   know, either retained counsel or (indiscernible) counsel

17   and obviously they can be gotten I guess at some -- in

18   some fashion and we've put counsel on notice of the

19   necessity to do that.

20            And I hadn't discussed this with Craig but one

21   of the things in thinking about this hearing today, I

22   think it may be worth exploring a couple of things.  The,

23   what I call extra claim file based materials that would

24   comprise the other things in the litigation material are

25   either going to be, you know, attorney/client, some type

Proceedings                    13

1    of privilege or they're certainly in the public realm and

2    I don't know how much they go to the underlying case at

3    all and since we've asked for them and haven't received

4    them and we haven't produced -- if we produced any, it's

5    a small amount.  I'm wondering if it makes sense to just,

6    you know, walk away from those because I don't know that

7    they add anything to the underlying claim.  But that's

8    the only thing I see as GEICO's -- having GEICO not

9    having produced at this time are those, you know,

10   litigation materials.

11          And as I said, before we went and entered into

12   the stay, you know, a couple of months ago, we had put

13   our client and our client's counsel -- I mean, there's

14   various -- to be honest with you, I think some of the

15   claims that went into litigation were handled by captive

16   counsel and some were handled by, you know, outside

17   retained counsel but not in my office.

18          So, they put them on notice and if they have to

19   marshal those documents, they will.  Again, it's going to

20   be costly and we've also asked for it but yet have not

21   received it from the other side.  So that -- from my

22   perspective that's what GEICO owes.

23          With respect to the discovery that the

24   defendants owe GEICO from the first, you know, wave of

25   paper discovery, let me start first with the balance of

Proceedings                    14

1  the patient files.  Your Honor had ordered that like

2  GEICO had earlier at the turn of the year, that the

3  defendants had to --

4           THE COURT:  Right.

5           MR. KING:  -- disgorge their patient files.  At

6  this point, based on our indexing, if you will, of the

7  files that we've received from the defendants, we show a

8  shortfall of roughly 500 files.  So, that's number one.

9           THE COURT:  And have you given them that last

10 of what's missing?

11          MR. KING:  I'm sorry?

12          THE COURT:  Have you given them a list of

13 what's missing, Mr. King?

14          MR. KING:  I think what -- I'll ask my

15 associate who is the expert on the files is on the phone.

16 Jackie, can you answer that question?

17          MS. MCETTRICK:  I can answer it.  The answer is

18 no and the problem is we can't determine what we have

19 specific to each patient because of the state in which

20 they are produced to us.  There are some that we just

21 can't figure out what patient name the records correspond

22 to.

23          So, we can cross-reference with the total

24 number that we know, which is how we're down 500 but we

25 can't tell which -- at least probably half of the files,

Transcriptions Plus II, Inc.

```
                         Proceedings                    15
 1   we can't tell what patient they correspond to.
 2            MR. KING:  In other words, your Honor, a lot of
 3   the documents were -- they weren't turned over, in other
 4   words, like a file of, you know, John Jones -- here's
 5   John Jones case and file.  It's just -- it's just a bunch
 6   of papers.  And that's part of the costliness of it.
 7   We've had to go through and try to match up a piece of
 8   paper with a patient file and hasn't been able to
 9   ascertain that in all cases.
10            So at this point we're still short a number of,
11   you know --
12            THE COURT:  How about -- let me ask you a
13   different question.  How about -- how many files do you
14   think you have that seem like they probably either
15   complete or adequate for your needs?  So you said you're
16   missing 500 but are there -- pick any number -- you know,
17   are there 500 that match up with your list that look like
18   you have the -- what you would expect to find or what you
19   at least see across --
20            MR. KING:  I'll ask Jackie to answer that.
21            MS. MCETTRICK:  The ones that we can confirm
22   what they are, it's probably about 5 or 600.
23            THE COURT:  Okay.  And we would --
24            MR. MEYERSON:  Judge, I have asked for a list
25   from them and I've also indicated to them and to the
```

Proceedings                          16

1  Court that many of these files -- patient files, go back

2  many, many years and a lot of them are the client -- my

3  client just doesn't have in possession any more.

4          And we gave them everything we had and, um, as

5  far as their claim that it's disorganized, I went through

6  -- I looked -- it was provided electronically.  I went

7  through and explained how it was organized and asked them

8  to let me know if there was any other issues if they

9  couldn't figure it out after that and we'd go through it

10 but we haven't done anything since then.  They haven't

11 gotten back to me.  They haven't given me a list of these

12 so-called 500 files.  So, I can't verify with my client

13 if he actually had these files or not.

14          But as I indicated before, many of these files

15 date back to 2001 and '02 and they're just not maintained

16 back that far.

17          THE COURT:  All right.  What about --

18          MR. MEYERSON:  As far as --

19          THE COURT:  Hang on.  Hang on.

20          MR. MEYERSON:  -- Rick's --

21          THE COURT:  Hang on.  Go ahead.

22          MR. MEYERSON:  -- Rick saying what we're

23 looking for (indiscernible) back to '98 is just

24 litigation files, that's not true.  We've asked for names

25 of employees dating back then, which would have included

```
                        Proceedings                    17
```

1   (indiscernible) Willie (ph.) who we discussed at

2   settlement.  We have an affidavit from her and we believe

3   she was a former employee.  And there's a number of other

4   employees that may testify similarly to her in regard to

5   what GEICO knew back then and was complacent about.

6           So, it really does go to our defense.  What I

7   think I would like --

8           THE COURT:  Okay.  But I am sorry -- let me --

9           MR. MEYERSON:  Sorry?

10          THE COURT:  Hold on.  Let me -- just let's

11  finished what we have talked about so far.  What I

12  understood, maybe I misunderstood, Mr. King, you're

13  talking about you have the claims files that GEICO has

14  and then some or many of those files were the basis for

15  litigation.  You have not tried to gather the litigation

16  files and you pointed out some of those were handled in-

17  house or by -- sorry, by your office or by captive

18  counsel and some by outside counsel.

19          You're suggesting that they don't really --

20  those files don't really have information that's

21  particularly useful; is that right?  Is that what --

22  that's the files you're talking about?

23          MR. KING:  Well, yeah, it's not separate files

24  really.  In other words, let's say you have a patient --

25  let's say a GEICO-insured claimant you know, Joe Smith,

```
                       Proceedings                  18
 1  gets treatment at Kogen's place and then later Kogen sues
 2  GEICO because GEICO didn't pay for Joe Smith's treatment.
 3           The claim file has been turned over but to the
 4  extent there were litigation materials --
 5           THE COURT:  Right.
 6           MR. KING:  -- that were created, you know,
 7  essentially after it went to counsel, which would be, you
 8  know, pleadings that are in the public record, or -- and,
 9  you know, basically attorney/client material between
10  GEICO and its counsel, I suppose, those haven't -- that
11  hasn't been turned over or if it has, it's de minimis.  I
12  admit, it's --
13           THE COURT:  Yes.
14           MR. KING:  -- it would be -- if it happened to
15  be in the claims file.  But I mean most of that is --
16  it's after it leaves GEICO and it goes to a law office,
17  then, you know, they have those files if they still have
18  them.  So, before we entered into the stay, you know, we
19  had put them on notice but we haven't turned that over,
20  number one.
21           With respect to -- and, you know, there's more
22  that I was going to get into, I don't know if you want me
23  to go back and forth but I think that -- you know, with
24  respect to -- Craig and I agree on the fact that, you
25  know, to the extent that there's an operative, you know,
```

```
                        Proceedings                  19
```

1  legally cognizable defense that has been articulated,

2  then you know, unlike the counterclaims which are not at

3  issue at this point, you know, then they would be

4  entitled to discovery vis-a-vis, you know, cognizably

5  articulable defense.

6           But really, if you -- technically, there's no

7  affirmative defenses because there's no operative answer

8  to that.

9           THE COURT:  All right.  I got that.

10          MR. KING:  Okay.

11          THE COURT:  What I want to talk about right now

12 is I understand there are these -- you're waiting for

13 decisions from the Court about some of these issues.

14 What I -- my question that started us down the path is

15 basically going back to where we were when we broke this

16 discovery into pieces.  There was the thought that at

17 least some of this discovery could happen and then what

18 you mentioned earlier was there are document --

19 basically, I'm going to call them holes in the document

20 production which you were in agreement, could be -- again

21 my language -- filled in but basically -- and then

22 there's a point at which you really or both of you are

23 either, you know, unwilling, unable, un-whatever, you

24 need the decisions from the Court.

25          So, I want to know what it is between here and

Proceedings                    20

1   my decision, what we can plan on happening while you're

2   waiting -- while you wait for these decisions to happen.

3           MR. KING:  Well, if we're going to forced to

4   turn over the litigation documents, we've asked for them

5   from the defendants and vis-versa, then we'll have to go

6   ahead and do that and that's understandable.

7           One of the things that dovetails with the --

8   and that's all I see from GEICO's perspective.

9           THE COURT:  Okay.

10          MR. KING:  With respect to the -- one of the

11  things that we talk about at great length during one of

12  our hearings last fall was that the Court ordered in no

13  uncertain terms that Dr. Kogen execute an affidavit to

14  include the source from which the defendants obtained the

15  documents that were being produced, affirm that the

16  defendants had searched for the documents in their

17  possession, custody or control, and describe the efforts

18  that the defendants undertook to locate those documents.

19          So, we're perfectly fine with a truthful

20  statement that these documents don't exist or we didn't

21  keep records or whatever the case may be but I think it's

22  got to be -- there's got to be a detailed affidavit

23  according to the terms that the Court laid out and then

24  that's going to be signed and then that would be

25  something that we could use you know, at depositions and

Proceedings                    21

1    at trial with the employees, as well as the doctor at

2    trial.

3          MR. MEYERSON:  Dr. Kogen provided an affidavit.

4    If there was an issue with it, then they need to at least

5    talk to me about it.  We provided an affidavit to them

6    with what -- you know, per the Court direction.

7          May I suggest, your Honor, discussing all these

8    discovery issues I think it may be more beneficial if we

9    just did a formal motion on all of them and get a court

10   ruling on it.

11         THE COURT:  That's not really so helpful to me.

12   We're just going to end up with more of these.  What's

13   the -- let's just talk about the ones that have been

14   discussed.  The litigation files, why is it that you --

15   defendant (indiscernible)?

16         MR. MEYERSON:  Well, we -- part of our -- a lot

17   of these claims have been settled or judgments have been

18   rendered against GEICO with prejudice and these are the

19   ones that they're trying to (indiscernible) money on.

20   It's our position that if they've been settled and

21   judgments have been rendered with prejudice, that those

22   claims are gone and they should not be part of this

23   action.

24         And that -- that's a substantial amount of

25   these claims.  GEICO did not voluntarily pay the claims

```
                         Proceedings                    22
1    that they're trying to recover money for.  Much of those
2    were paid only after judgments or after a litigation had
3    been commenced and GEICO agreed to settle them with
4    prejudice.  So, we want to make sure that we have all
5    that information and GEICO certainly would have much of
6    that information.
7              THE COURT:  Okay, but two things; (1), doesn't
8    your client have that information and (2) for Mr. King's
9    side, rather than getting into the files of all these
10   cases, is there some list, you know, you can run the
11   docket essentially for those cases and know how they
12   ended up if this a valid area of inquiry?
13             MR. MEYERSON:  I would be glad to sit down with
14   Rick and go through our list.  I would be glad to produce
15   a list of those that we believe were settled or judgment
16   rendered and then, you know, Rick can go through it and
17   if he doesn't agree, then you know, whichever ones he
18   doesn't agree with, we can go from there.
19             THE COURT:  Mr. King, what do you think of
20   that?  Because it doesn't sound --
21             MR. KING:  I mean that's a starting place,
22   your Honor.  That's fine with me. I mean, that's what I
23   was going to say what your Honor said.  If he's -- if the
24   defendants have a list, then they must have something
25   that supports the conclusion that's manifest on that
```

```
                    Proceedings                    23
1   list.  So that would seem to me to be the operative
2   document, the judgment or the -- you know, the release,
3   the papers that --
4           MR. MEYERSON:  Judge, again it's these things
5   date back to 2001 and my client has records that indicate
6   that they were settled but (indiscernible) necessarily
7   have the settlement (indiscernible) and so forth.
8           THE COURT:  Does, I mean --
9           MR. KING:  Your Honor?
10          MR. MEYERSON:  That's why we need to get
11  discovery because we're entitled to get what they have.
12          THE COURT:  I know, but hold on.  Hold on.
13          (Crosstalk)
14          THE COURT:  Yes, but we're not -- this is --
15  we're not --
16          MR. KING:  Your Honor, if I may, I apologize
17  but --
18          THE COURT:  Go ahead.
19          MR. KING:  -- you know, as we talked about at
20  the settlement conference and everybody's been getting
21  along very professionally, but GEICO produced hundreds of
22  thousands of documents and it sounds like Dr. Kogen maybe
23  isn't a good record keeper but he had lawyers, so he can
24  ask his lawyers to get him his documents.
25          I think that at this point, you know, if we're
```

                         Proceedings                    24

1    looking at the balance of the equities, we've produced a
2    ton of material and the defendants have basically -- and
3    I'm not saying that there's been anything untoward --
4              THE COURT:  Right.
5              MR. KING:  -- but there's a whole -- there's a
6    void, a dearth, a void of documents that you would expect
7    to find from this sophisticated psychologist who does
8    business out of state, et cetera and it's just not there.
9              So, you can hear the frustration in my voice.
10   This is a huge undertaking to go just get every
11   litigation file and --
12             THE COURT:  Okay.
13             MR. KING:  -- frankly, I don't know how many
14   there are.
15             THE COURT:  Look, we're not --
16             MR. KING:  But it's just --
17             THE COURT:  Hang on.  Hang on.  This is what --
18   first of all, I understand, Mr. Meyerson, your point that
19   you're saying you're entitled to everything they have.
20   But they don't have to effectively recreate what your
21   client should have.
22             Now but just as a practical business matter, it
23   doesn't sound like what your client -- what -- Mr.
24   Meyerson, what your clients are talking about are
25   actually the litigation file.  What you want to know --

Proceedings                    25

1    what you really want, it sounds like, is a conversation

2    with GEICO to just clear up this question about are there

3    cases that you think are settled, that they are saying

4    are including in the 1,500 problematic cases saying that

5    they're -- basically that would mean that they're not

6    settled.

7             But, I mean, don't -- does your client,

8    Mr. Meyerson, not have some, you know, master list of

9    either cases or checks and/or Mr. King, doesn't your

10   client have a docket that says, you know, these 25 cases

11   -- I have no idea, I'm throwing these numbers out -- but

12   these cases were settled, just -- I mean, or you could

13   run these -- I mean if these are all mostly in state

14   court, some of them you should be -- I don't know, maybe

15   you can't go back to 2000 on the -- whatever, Web Supreme

16   or whatever that thing is called, but anyway, doesn't

17   somebody have a list of the cases that you can both talk

18   about and go through without having to go out to the

19   lawyers in the field and then narrow it way, way down so

20   that you -- maybe there are a couple of cases you've got

21   to get the files for?  But, I mean --

22             MR. KING:  Yes, let's --

23             MR. MEYERSON:  Your Honor. Craig Meyerson.

24   Yes, I believe we can do that.

25             THE COURT:  I mean that -- to the extent that

Proceedings                                    26

1   this is going to narrow the claims that seems like

2   something worth doing without having to ask GEICO to go

3   to its own file -- you know, either GEICO's actual,

4   physical files or go through every electronic files or

5   they're captive counsel's files or they're outside

6   counsel and that just seems like -- it seemed to me

7   problematic. It's a huge amount of resources.  It doesn't

8   seem like it's going to lead all that far and we're going

9   to have to deal with all those privilege issues.  And to

10  the extent we can get this done, to answer this question

11  without doing that, we should do that.

12          MR. MEYERSON:  Yes, I agree.  Again, Craig

13  Meyerson, your Honor.

14          I do agree with that and what you're saying.

15  The other issue, as far as litigation files go, and this

16  is -- it regards any affidavits that GEICO might have

17  filed or produced in defense of these litigated claims,

18  similar to the Dawn Willie affidavit that we discovered,

19  which would go to our defense that GEICO knew about these

20  -- you know, knew about all of the facts that's now

21  alleged in this fraud and they knew about it back in '99

22  -- 1999, that would go a long way to our defense.

23          THE COURT:  All right.

24          MR. MEYERSON:  So it is a -- yes, the

25  settlement and judgments and so forth but also in the

```
                        Proceedings                    27
 1   affidavits that GEICO might have --
 2            THE COURT:  No, no, no, but wait, wait, wait.
 3   How are they ever going to do that without going into
 4   ever file?  I mean that seems -- how is that going to
 5   happen?  And then unless somehow -- and I don't know the
 6   answer to this, there was some centralized, you know,
 7   source for the record keeping and plus aren't those
 8   public documents?
 9            I mean now we're getting into the question of
10   who is supposed to bear the burden for this?  I don't
11   know.  I'm asking you but it seems like now you are
12   saying they should go into every file and see if they
13   filed this kind of a document and how is that going to be
14   something that is practical without looking at all these
15   files?
16            MR. MEYERSON:  I don't have an answer to that,
17   Judge.
18            THE COURT:  Well, then but the question --
19            MR. MEYERSON:  You know that is --
20            THE COURT:  -- the question --
21            MR. MEYERSON:  -- they brought these claims but
22   --
23            THE COURT:  No, no, but the question --
24            MR. MEYERSON:  -- and we have to defend against
25   them and --
```

```
                        Proceedings                    28
 1              THE COURT:  Well --
 2              MR. MEYERSON:  -- I'm sure they were aware that
 3    it would be an involved process that, you know --
 4              THE COURT:  But then you know --
 5              MR. MEYERSON:  -- they should have been aware
 6    of it.
 7              THE COURT:  All right.  But then, Mr. Meyerson,
 8    the question is why don't you have to go to the public
 9    docket and try to find these things?  I mean if
10    they're --
11              MR. MEYERSON:  It's --
12              THE COURT:  -- the point is, they were filed in
13    cases.
14              MR. MEYERSON:  Well in many cases, the -- once
15    the cases are closed in court, those dockets -- the
16    documents are returned --
17              MR. KING:  (Indiscernible).
18              MR. MEYERSON:  -- to the parties, so they're
19    not always -- they're not kept on file in many cases.
20              MR. KING:  Certainly, your Honor --
21              MR. MEYERSON:  You know, I think what you mean
22    -- Rick and I can actually sit down and try and go
23    through that and figure out --
24              MR. KING:  Look, I think we can go through the
25    list, your Honor.  I mean, I get back to the whole thing,
```

```
                          Proceedings                    29
 1   if there's a document that was filed in a litigation,
 2   right, and obviously the parties get the documents -- so
 3   Kogen has the document; whether his agent has it or his
 4   former agent or whatever.  So, Kogen is possessed of the
 5   document if there -- a document exists like Craig is
 6   referring to.  But we'll go through Craig's list and we
 7   will -- you know, that sounds like a good start.  Let's
 8   start there.
 9             THE COURT:  All right.  But I think you're
10   talking about two different things; one is yes, the
11   project should be to go through the list about the -- of
12   the cases that may have been settled and figure out what
13   your respective lists say and identify those cases but
14   then the second piece is -- this affidavit that we were
15   -- that defendants have identified (1) that suggests
16   GEICO was no notice of the things that it's now
17   identifying as issues.
18             I may ask you to have a conversation about
19   potentially ways to identify where those would be and how
20   to get them and figure whose cost it would be.  I'm not
21   sure how to allegate that -- allocate that without
22   getting more information about that but I mean it may be
23   that at least you should have the deposition of the one
24   or two or whoever the people are who worked on that and
25   that would be quicker and cheaper than going into every
```

Proceedings                                      30

1   single file and figuring that out.  So you should talk

2   about that issue.

3          Let's go back to the issue that your associate

4   knows about, the medical files.  I think that's the --

5   another -- so if GEICO can tell -- I mean, Mr. Meyerson,

6   the list of the cases that you think -- the people you

7   think you would have something for and you don't and then

8   the ones that you think are incomplete and let him talk

9   to his client and figure out, you know, what it is --

10  what's going on there.

11         And then the question about is -- let's just go

12  back to this already produced affidavit about what Dr.

13  Kogen did, is that -- Mr. King your position is that what

14  you got is not sufficient?  Is that your position?

15         MR. KING:  No, the --

16         THE COURT:  Or --

17         MR. KING:  That's absolutely right.  And I'll

18  take it up with Craig.  I mean your Honor's oral order

19  couldn't be more clear.  So, I will just -- I will ask

20  him to mirror that in Dr. Kogen's response.

21         THE COURT:  All right.

22         MR. TILDEN: I don't actually -- this is Nathan

23  Tilden.  I donh't -- we didn't actually receive any

24  affidavit.

25         THE COURT:  Well, that's what I am unclear of.

Transcriptions Plus II, Inc.

```
                    Proceedings                 31
```

1              MR. MEYERSON:  We sent you an affidavit, I

2     believe I spoke to Jackie about it and asked her let me

3     to know --

4              UNIDENTIFIED SPEAKER:  (Indiscernible).

5              MR. MEYERSON:  -- what was the problem.  So, I

6     think you got it.  If you think (indiscernible), I'll

7     send it to you again.

8              (Crosstalk)

9              UNIDENTIFIED SPEAKER:  Yeah, please send it

10    again.

11             MR. MEYERSON:  But we did produce an affidavit.

12             MS. MCETTRICK:  I have never seen that

13    affidavit.

14             MR. MEYERSON:  Okay.  We produced an affidavit.

15    We'll produce it to you again.

16             MR. TILDEN:  Judge, this is Nathan Tilden

17    again.  With respect to the actual files that Craig has

18    produced, I know when GEICO produced the files they were

19    under court order to index what was provided by --

20             THE COURT:  Yes.

21             MR. TILDEN:  -- either patient name or claim

22    number.

23             THE COURT:  Yes.

24             MR. TILDEN:  I think it would be, you know,

25    obviously equitable and would be the most efficient way

Proceedings                                          32

1   would be to have Dr. Kogen or Craig index what was

2   provided to us and that way, we know precisely which

3   patient goes with which stack of files we got.

4          THE COURT:  I mean, I think Mr. Meyerson, that

5   seems to me reasonable given the way -- what you

6   described the production is not the way they were.

7          MR. MEYERSON:  I have no problem with that,

8   your Honor.

9          THE COURT:  All right.  All right.  So you're

10  going to index them and then continue the conversation.

11  All right.  I know what's on my plate from you all for

12  the next couple of weeks.  You're going to go on these

13  couple of projects which is going to be Mr. Meyerson,

14  you're going to index the files that were produced and

15  then have the conversation with Mr. King and it sounds

16  like, Ms. McEttrick, you're the person in charge of the

17  files.  See what's missing from Dr. Kogen's side.  You're

18  going to have a conversation about what the affidavit

19  shoiuld have said as to those -- as to files being

20  produced and to the extent files were not produced, have

21  a complete affidavit.

22          And then have a discussion among counsel about

23  the settlement documents or cases that were closed.

24  Certainly, that obviously sounds like Dr. Kogen's most

25  interested in the ones closed in his favor and see how --

Proceedings                              33

1   what Dr. Kogen has matches up with GEICO or at least what

2   GEICO has about those documents being -- sorry, those

3   cases being closed and what the status of that is.

4            And then the -- to me, the unknown about how to

5   -- the point on this list about I am not sure how it

6   should get resolved, but -- so I want you to have more

7   information next time we talk as obviously defendants are

8   interested in cases in which GEICO may have filed

9   affidavits that make certain statements that are similar

10  to the affidavit that Dr. Kogen is now relying on to show

11  that GEICO had information that suggests it should have

12  brought this lawsuit earlier if it was ever going to

13  bring it.  And I'm not sure how to know what's in the

14  files or where that burden rests, whether it should come

15  from GEICO's side or, you know, those are public records,

16  can they be found in the Court or is there somebody who -

17  - somebody or some persons who should be deposed and that

18  will just cut to the chase because they would have been

19  the sources of this affidavit or some other way of trying

20  to resolve that.

21           I understand that it's important to the

22  defendants in terms of the defense that they would like

23  to raise but you know, there's already been a -- I mean,

24  we already had this discussion.  We were here for the

25  settlement discussion.  There's already been an awful lot

```
                    Proceedings                    34
```

1   of expense in this case.  So, to the extent we can focus

2   it such that, you know, either the expense is lessened

3   because the work is lessened or at least it's done in a

4   way that is as efficient as possible, seems to me the

5   best course.

6          So, all right.  I know you're waiting for the

7   decisions from us, so in line -- when you get them, then

8   we'll come back to where you are on these projects and

9   see what the next round should be.  So, is there anything

10  else you need in the short term?

11         MR. MEYERSON:  Your Honor, the motions to

12  dismiss, the plaintiff and counterclaim defendants have

13  briefed it.  Our opposition has not been briefed yet and

14  the reply hasn't come, you know, obviously on that.  So,

15  we would have to submit opposition --

16         THE COURT:  Okay.  So I am not --

17         MR. MEYERSON:  -- to the motions and also we

18  would like to make a cross-motion on the 12(c) on the

19  pleadings.

20         THE COURT:  I'm sorry, who was that?  Mr. --

21         MR. MEYERSON:  Oh, that's the defendants, Craig

22  Meyerson.

23         THE COURT:  Okay.  The 12(9c) is a little bit

24  out of the -- usually those motions go to the district

25  judge, so -- but given the status of the complaint, and

```
                        Proceedings                    35
 1  whether you can make that motion, it's a little bit
 2  procedurally mixed up at the moment.  So, I'll look at
 3  all of them and then tell you where we are at, okay?
 4          But you want to -- all right, I will let -- I
 5  need to look at them to know what else to ask you.  Okay?
 6          MR. KING:  Your Honor?
 7          THE COURT:  Um-hum.
 8          MR. KING:  One thing -- thank you, your Honor.
 9  This is Rick King; one last thing.
10          THE COURT:  Yes.
11          MR. KING:  Just in terms of the last scheduling
12  order that your Honor set forth, can we agree that -- I
13  mean, we're going to need a new scheduling order
14  obviously.  I think the present one calls for, you know
15  -- it calls for expert disclosures, a couple of months
16  ago and the close of discovery, you know, coming up in
17  early fall.  So, I -- can I assume that that -- those are
18  suspended at this point until we reconvene and then we'll
19  know what the lay of the land is?
20          THE COURT:  Yes, so we'll -- the order that I
21  will enter from here will say that the previous dates --
22  the dates previously scheduled are suspended and the
23  parties are going to be working on the five things that
24  we just identified, the litigation files, the affidavit,
25  this Kogen back and forth, the complete medical files and
```

Proceedings                      36

1  the -- where the affidavit might be or other affidavits

2  that are similar to the ones that the defendant wants to

3  rely on in terms of, you know, GEICO being on notice.

4          I mean, I think that's going to take you all

5  some time.  So, that's the -- that's the next project and

6  you know, obviously we need some time to wrap up these

7  motions.

8          MR. KING:  Right.

9          MR. MEYERSON:  Okay.

10          THE COURT:  So, yes, is the answer to your

11  question but not to the extent that the things we just

12  went through are suspended.  So, just so we're clear.

13          MR. MEYERSON:  Okay.

14          MR. KING:  No, no, no doubt.  Thank you, your

15  Honor.

16          THE COURT:  All right.  Anybody anything else?

17          MR. KING:  No.

18          MR. MEYERSON:  No.

19          THE COURT:  All right.  Thank you.  Have a good

20  rest of the summer.

21                  (Matter concluded)

22                       -o0o-

23

24

25

# C   E   R   T   I   F   I   C   A   T   E

I, LINDA FERRARA, hereby certify that the foregoing transcript of the said proceedings is a true and accurate transcript from the electronic sound-recording of the proceedings reduced to typewriting in the above-entitled matter.

I FURTHER CERTIFY that I am not a relative or employee or attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

IN WITNESS WHEREOF, I hereunto set my hand this **31st** day of **July**, 2013.

*Linda Ferrara*
Linda Ferrara

CET**D 656
Transcriptions Plus II, Inc.